## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

## NORTHERN DIVISION

| | |
|---|---|
| Oluwakemi Adewol, on behalf of herself and all others similarly situated,<br><br>      Plaintiff,<br><br>  v.<br><br>TGINESIS LLC,<br>      Defendant. | CASE NO 1:23-CV-00509-GLR<br><br>**COMPLAINT – CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

**FIRST AMENDED CLASS ACTION COMPLAINT**

Plaintiff Oluwakemi Adewol brings this action on behalf of herself and all others similarly situated against Defendant TGINESIS LLC ( "TGIN" or "Defendant"). Plaintiff makes the following allegations pursuant to the investigation of counsel and based upon information and belief, except as to the allegations specifically pertaining to herself, which are based on personal knowledge.

## NATURE OF THE ACTION

1.     This case arises from Defendant's deceptive and misleading practices with respect to its marketing and sale of its vitamin products (collectively, the "Product" or "Products").[1]

2.     Defendant manufactures, markets, and sells its Products throughout the United States including the State of Maryland.

3.     Despite the representations made on the Products' labels which lead reasonable consumers to believe that the Products are "natural," they are not.

4.     The brand has grown significantly, and this growth was not by accident. Rather, it developed from specifically targeting the "natural" market with intense focus.

5.     Defendant's marketing efforts stress the purported "natural" composition of their Products.

---

[1] At the time of this filing, the following TGIN products are included in this definition: Wild Growth Vitamins Hair, Skin + Nails Gummies.

6.     Notably, the principal display panel of all of the Products states that the Products are "Natural."



7.     The word "Natural" is a representation to a reasonable consumer that the Product contains only natural ingredients.

8.     This represents that the Product is "natural" to consumers.

9.     Reasonable consumers, including Plaintiff,  interpret "natural" to mean that the product does not include synthetic ingredients.

10.    Despite this representation, the Products are not natural because they include multiple synthetic ingredients.

11.    Specifically, the Products contain the following synthetic ingredients: Red No. 40 and Citric Acid.

12.    Plaintiff and those similarly situated ("Class Members") relied on Defendant's misrepresentations that the Products are "natural" when purchasing the Products.

13.    Specifically, Plaintiff and Class Members relied upon the representation that the Product is "NATURAL" which is prominently featured on the front of each Product's label.

2

14.     Reasonable consumers purchased the Products believing, among other things, that they were accurately represented. Specifically, reasonable consumers believed that the Products contained accurate label information and representations. Reasonable consumers would not have purchased the Products if they had known about the misrepresentations or would have purchased them on different terms.

15.     Plaintiff brings this action individually and on behalf of those similarly situated and seeks to represent a Nationwide Class, a Multi-State Consumer Class, and a Maryland Class. Plaintiff seeks damages, interest thereon, reasonable attorneys' fees and costs, restitution, other equitable relief, and disgorgement of all benefits Defendant has enjoyed from its unlawful and/or deceptive business practices, as detailed herein. In addition, Plaintiff seeks injunctive relief to stop Defendant's unlawful conduct in the labeling and marketing of the Products.

16.     Defendant's conduct violated and continues to violate, *inter alia*, the consumer protection statutes of Maryland. Defendant has been and continues to be unjustly enriched. Accordingly, Plaintiff brings this action against Defendant on behalf of herself and Class Members who purchased the Products during the applicable statute of limitations period (the "Class Period").

## JURISDICTION AND VENUE

17.     This Court has personal jurisdiction over Defendant. Defendant purposefully avails itself of the Maryland consumer market and distribute the Products to many locations within this District and hundreds of retail locations

3

throughout the State of Maryland, where the Products are purchased by hundreds of consumers every day.

18.     This Court has original subject-matter jurisdiction over this proposed class action pursuant to 28 U.S.C. § 1332(d), which, under the provisions of the Class Action Fairness Act ("CAFA"), explicitly provides for the original jurisdiction of the federal courts in any class action in which at least 100 members are in the proposed plaintiff class, any member of the plaintiff class is a citizen of a State different from any defendant, and the matter in controversy exceeds the sum of $5,000,000.00, exclusive of interest and costs. Plaintiff alleges that the total claims of individual members of the proposed Class (as defined herein) are well in excess of $5,000,000.00 in the aggregate, exclusive of interest and costs.

19.     Venue is proper in this District under 28 U.S.C. § 1391(a). Plaintiff's purchases of Defendant's Products, substantial acts in furtherance of the alleged improper conduct, including the dissemination of false and misleading information regarding the nature, quality, and/or ingredients of the Products, occurred within this District and the Defendant conducts business in this District.

## PARTIES

20.     Plaintiff Oluwakemi Adewol is a citizen of Maryland who purchased the Products during the class period, as described herein. Plaintiff's purchases took place in Maryland. In addition, the labeling on the package of the Products purchased by Plaintiff, including the "natural" representations, is typical of the advertising and labeling of the Products purchased by members of the Class. Plaintiff relied on the representation on the packaging that the Products were "natural."

4

a. Within the past two years, Plaintiff purchased the Wild Growth
Vitamins Hair, Skin + Nails Gummies on multiple occasions. These
purchases were made at retailers throughout the State of Maryland.
Most recently in May 2022, Plaintiff purchased Defendant's Product
from an Ulta store in Howard County, Maryland for $19.99.

b. Prior to her purchase, Plaintiff saw and relied on Defendant's labeling
representing that the Products were "NATURAL."

c. Plaintiff wished to purchase the natural vitamins for personal
consumption. When Plaintiff saw Defendant's misrepresentations prior
to and at the time of purchase, she relied on Defendant's prominent
representations and claims about the Products. Specifically, that it was
"natural" and thus contained no synthetic ingredients.

d. Plaintiff relied on the Defendant's representations, including but not
limited to, that the Products were natural.

e. Plaintiff read and relied upon the representation that the Product was
"NATURAL" which appears on the front label of the Product.

f. Plaintiff understood these representations to mean that the Products
contained no synthetic ingredients. Had Plaintiff known the truth –
that the Products contained synthetic ingredients – Plaintiff would not
have purchased the Products at a premium price.  Plaintiff desires
natural vitamins and wishes to purchase natural vitamins presently
and in the future. Unless Defendant conforms to the representations

5

made on the packaging, Plaintiff will be unable to test and trust the representations made on the Product at the point of sale even though she would like to purchase and consume a natural vitamin like the Product is purported to be by Defendant.

g.  Additionally, if Defendant removed synthetic ingredients, or the Products were no longer deceptively labeled, Plaintiff would purchase the Products again in the future. Plaintiff brings the claims below seeking damages, actual and statutory, as well as injunctive relief.

21.     Defendant TGINESIS LLC. is an Illinois company with its principal place of business in Chicago, Illinois.

a.  Defendant produces, markets and distributes the Products in retail stores across the United States including stores physically located in the State of Maryland and this District.

b.  The deceptive labeling and marketing decisions made by Defendant occurred primarily and substantially at its headquarters located within the State of Illinois.

22.     Plaintiff reserves the right to amend this Complaint to add different or additional defendants, including without limitation any officer, director, employee, supplier, or distributor of Defendant who has knowingly and willfully aided, abetted, or conspired in the false and deceptive conduct alleged herein.

23.     Whenever reference is made in this Complaint to any representation, act, omission, or transaction of a defendant, that allegation shall mean that the

defendant did the act, omission, or transaction through its officers, directors, employees, agents, and/or representatives while they were acting within the actual or ostensible scope of their authority.

## FACTS

### A. Consumers Value Representations that a Product is Natural

24.     Consumers have become increasingly concerned about the effects of synthetic and chemical ingredients in food, cleaning products, bath and beauty products and everyday household products.[2]

25.     Companies such as the Defendant have capitalized on consumers' desires for purportedly "natural products."

26.     Indeed, consumers are willing to pay, and have paid, a premium for products branded "natural" over products that contain synthetic ingredients.

27.     In 2015, sales of natural products grew 9.5% to $180 billion.[3] Reasonable consumers, including Plaintiff and Class Members, value natural products for important reasons, including the belief that they are safer and healthier than alternative products that are not represented as natural.

_____

[2] Julianna M. Butler & Christian A. Vossler, *What is an Unregulated and Potentially Misleading Label Worth? The case of "Natural"-Labelled Groceries*, Environmental & Resource Economics, Springer; European Association of Environmental and Resource Economists, vol. 70(2), pages 545-564 (2017).
[3] *Natural Products Industry Sales up 9.5% to $180bn Says NBJ*, FOOD NAVIGATOR, http://www.foodnavigator-usa.com/Markets/EXPO-WEST-trendspotting-organics-natural-claims/(page)/6 ; *see also* Shoshanna Delventhal, *Study Shows Surge in Demand for "Natural" Products*, INVESTOPEDIA (February 22, 2017), http://www. investopedia.com/articles/investing/022217/study-shows-surge-demand-natural-products.asp  (Study by Kline Research indicated that in 2016, the personal care market reached 9% growth in the U.S. and 8% in the U.K. The trend-driven natural and organic personal care industry is on track to be worth $25.1 million by 2025).

28.     Further, consumers have become increasingly concerned about the effects of synthetic ingredients in consumer products.[4]

29.     Reasonable consumers, including Plaintiff and Class Members, value natural products for important reasons, including the belief that they are safer and healthier than alternative products that are not represented as natural.

30.     As a result, "natural" products are worth more than products that contain artificial ingredients, and consumers pay a premium for products labeled "natural" over products that contain synthetic ingredients.

### B. **Plaintiff and Other Reasonable Consumers Understand Natural to Mean that a Product Lacks Artificial Ingredients**

31.     Plaintiff and Class Members understand "natural" representations to mean that a product lacks synthetic ingredients.

32.     This interpretation is consistent with the understanding of a reasonable consumer.

33.     The test to determine if a company's "natural" representation is deceptive is judged by whether it would deceive or mislead a reasonable person. To assist in ascertaining what a reasonable consumer believes the term "natural" means, one can look to regulatory agency guidance.

34.     Federal agencies have warned companies that they must ensure that they can substantiate "natural" claims.

35.     In 2013, the United States Department of Agriculture ("USDA") issued a Draft Guidance Decision Tree for Classification of Materials as Synthetic or

---

[4] Butler and Vossler, *supra* note 2.

Nonsynthetic (Natural). In accordance with this decision tree, a substance is natural—as opposed to synthetic—if: (a) it is manufactured, produced, or extracted from a natural source (i.e. naturally occurring mineral or biological matter); (b) it has not undergone a chemical change (i.e. a process whereby a substance is transformed into one or more other distinct substances) so that it is chemically or structurally different than how it naturally occurs in the source material; or (c) the chemical change was created by a naturally occurring biological process such as composting, fermentation, or enzymatic digestion or by heating or burning biological matter.[5]

36.    The FTC has warned companies that the use of the term "natural" may be deceptive:[6]

> Marketers that are using terms such as natural must ensure that they can substantiate whatever claims they are conveying to reasonable consumers. If reasonable consumers could interpret a natural claim as representing that a product contains no artificial ingredients, then the marketer must be able to substantiate that fact.

37.    Likewise, the Food and Drug Administration ("FDA") warns that any "natural" labeling on products must be "truthful and not misleading."[7]

---

[5] U.S. Department of Agriculture, Draft Guidance Decision Tree for Classification of Materials as Synthetic or Nonsynthetic, March 26, 2013, *available at* https://web.archive.org/web/20140818174458/http://www.ams.usda.gov/AMSv1.0/get file?dDocName=STELPRDC5103308.

[6] 75 Fed. Reg. 63552, 63586 (Oct. 15, 2010).

[7] U.S. Food and Drug Administration, Small Business & Homemade Cosmetics: Fact Sheet, *available at* http://www.fda.gov/Cosmetics/ResourcesForYou/Industry/ucm388736.htm#7.

38.     In April 2016, the FTC settled with four manufacturers and filed a complaint against a fifth company for representing that its products were "natural" when they contained synthetic ingredients. The manufacturers agreed to cease marketing the products in question as being "natural."[8]

39.     Surveys and other market research, including expert testimony Plaintiff intends to introduce, will demonstrate that the term "natural" is misleading to a reasonable consumer because the reasonable consumer believes that the term "natural," when used to describe goods such as the Products, means that the goods are free of synthetic ingredients. For example, according to a consumer survey, "[e]ighty-six percent of consumers expect a 'natural' label to mean processed foods do not contain any artificial ingredients."[9]

40.     A reasonable consumer's understanding of the term "natural" comports with that of federal regulators and common meaning. That is, the reasonable consumer understands the representation that a product is "natural" to mean that it does not contain any synthetic ingredients.[10]

---

[8] *Four Companies Agree to Stop Falsely Promoting Their Personal-Care Products as "All Natural" or "100% Natural"; Fifth is Charged in Commission Complaint*, (April 2016), https://www.ftc.gov/news-events/press-releases/2016/04/four-companies-agree-stop-falsely-promoting-their-personal-care (last visited Mar. 17, 2021).

[9] Urvashi Rangan, Comments of Consumers Union on Proposed Guides for Use of Environmental Marketing Claims, 16 C.F.R. Part 260, Notice of the Federal Trade Commission (2010), *available at* https://www.ftc.gov/sites/default/files/documents/public_comments/guides-use-environmental-marketing-claims-project-no.p954501-00289%C2%A0/00289-57072.pdf (also accessible as Comment 58 at http://www.ftc.gov/policy/publiccomments/initiative-353).

[10] Butler and Vossler, *supra* note 2. "The vast majority of respondents stated a belief that 'natural' signals no artificial flavors, colors and/or preservatives." *Id.*

C. **Defendant Represents that the Products are Natural**

41.    Defendant capitalizes on consumers' preferences for natural products by making representations to consumers on its Products that they are natural.

42.    The front label of every Product states that the Product is "Natural."

43.    The following image is an example of that representation being prominently made on one of the Products:



44.    Based on the language that appears on the front of each product, Plaintiff reasonably believed that Products contained only natural ingredients.



45.     "NATURAL" is a representation to a reasonable consumer that the Products contain only natural ingredients.

46.     Defendant represents on its Products' labels that the Products are "NATURAL."

D.   **Defendant's Representations Are False, Misleading, and Deceptive**

47.     Despite representing that the Products are "natural," the Products contain multiple synthetic ingredients.

> **Other Ingredients**: Glucose Syrup, Sugar, Glucose, Pectin, Citric Acid, Vegetable Oil (contains Carnauba Wax), Purple Carrot Juice Concentrate, Titanium Dioxide, Natural Raspberry Flavour, Natural Blueberry Flavour, Allura Red(E129 FD&C Red No. 40).

48.     Thus, Defendant's representations that the Products are "natural" is false, misleading, and deceptive because the Products contain ingredients that are, as set forth and described below, synthetic.[11]

---

[11] Other ingredients in the Products may also be artificial as well. Plaintiff's investigation is ongoing and will seek to amend the Complaint to specify other potential artificial ingredients in the future.

a. **Red No. 40** is a synthetic food coloring[12] that is associated with carcinogenic effects[13] and hyperactivity in children.[14]

b. **Citric Acid** is recognized by the FDA and other federal agencies as an artificial substance.[15] Citric acid is added as a synthetic preservative, flavorant, and acidity regulator. It is commonly manufactured through solvent extraction or mycological fermentation of bacteria.[16] While the chemical's name has the word "citric" in it, citric acid is not extracted from fruit. Rather, it is industrially manufactured by fermenting genetically modified strains of the black mold fungus *Aspergillus niger*.[17]

---

[12] Brian Rohrig, *Eating with Your Eyes: The Chemistry of Food Colorings*, CHEMMATTERS (Oct. 2015), https://www.acs.org/education/resources/highschool/chemmatters/past-issues/2015-2016/october-2015/food-colorings.html.

[13] Sarah Kobylewski & Michael F. Jacobson, *Toxicology of food dyes*, INTERNATIONAL JOURNAL OF OCCUPATIONAL AND ENVIRONMENTAL HEALTH, 18:3, 220-246  (2012), DOI: 10.1179/1077352512Z.00000000034.

[14] FDA, *Color Additives and Behavioral Effects in Children* (Oct. 7, 2019), https://www.fda.gov/media/131378/download.

[15] *See* FDA Informal Warning Letter to the Hirzel Canning Company (August 29, 2001) ("the addition of calcium chloride and citric acid to these products preclude use of the term 'natural' to describe this product."); U.S. International Trade Commission, Synthetic Organic Chemical Index, USCTIC Pub. 2933, at 3-105 (Nov. 1995).

[16] 21 C.F.R. § 184.1033(a).

[17] *See*, *e.g.*, Belen Max, et al. *Biotechnological Production of Citric Acid*, BRAZILIAN JOURNAL OF MICROBIOLOGY, 41.4 Sao Paolo (Oct./Dec. 2010) and Sweis, Iliana E, and Bryan C Cressey. *Potential role of the common food additive manufactured citric acid in eliciting significant inflammatory reactions contributing to serious disease states: A series of four case reports*, TOXICOLOGY REPORTS, 5.808 ( Aug. 9 2018).

49.     Consumers lack the meaningful ability to test or independently ascertain or verify whether a product is natural, especially at the point of sale. Consumers would not know that the Products contain unnatural, synthetic ingredients, by reading the ingredients label.

50.     Discovering that the ingredients are not natural and are actually synthetic requires an investigation beyond that of the skills of the average consumer. That is why, even though the ingredients listed above are identified on the back of the Products' packaging in the ingredients listed, the reasonable consumer would not understand – nor are they expected to understand – that these ingredients are synthetic.

51.     Moreover, the reasonable consumer is not expected or required to scour the ingredients list on the back of the Products in order to confirm or debunk Defendant's prominent front-of-the-product claims, representations, and warranties that the Products are "natural."

52.     Defendant did not disclose that the above listed ingredients are synthetic ingredients anywhere on the Product. A reasonable consumer understands Defendant's "natural" claims to mean that the Products are "natural" and do not contain synthetic ingredients.

53.     Consumers rely on label representations and information in making purchasing decisions.

54.     The marketing of the Products as "natural" in a prominent location on the labels of all of the Products, throughout the Class Period, evidences Defendant's awareness that "natural" claims are material to consumers.

55.     Additionally, Defendant is aware that products containing synthetic ingredients have lower demand and exploit reasonable consumers by projecting that the Products are "natural" and free of synthetic, bad ingredients.

56.     Defendant's deceptive representations are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions.

57.     Plaintiff and the Class Members reasonably relied to their detriment on Defendant's misleading representations and omissions.

58.     Class Members, acting reasonably, have been deceived by Defendant's "natural" representations. For example:

★☆☆☆☆   **Thank God it's (Not) Natural?**

Despite the brand name "thank god it's natural," this product contains Allura Red, which is a synthetic dye. If you are looking for a natural product, this is--surprisingly--not it. I would encourage "Thank God it's Natural" to only include natural ingredients under that brand name. I would also encourage Ulta to review its products and ensure they are honest in product advertisement. I was surprised the receive a synthetic product under this name from this retailer.

a.

★☆☆☆☆   **Hypocritical Product**

tgin - Thank God it's Natural - but the last ingredient is Red No. 40 -_-

b.

15

59.     Defendant's false, misleading, and deceptive misrepresentations and omissions are likely to continue to deceive and mislead reasonable consumers, as they have already deceived and misled the Plaintiff and the Class Members.

E.  **Defendant's Deceptive Conduct Caused Plaintiff's and Class Members' Injuries**

60.     In making the false, misleading, and deceptive representations and omissions described herein, Defendant knew and intended that consumers would pay a premium for Products labeled "natural" over comparable products not so labeled and marketed.

61.     As an immediate, direct, and proximate result of Defendant's false, misleading, and deceptive representations, Defendant injured the Plaintiff and the Class Members in that they:

a.  Paid a sum of money for Products that were not what Defendant represented;

b.  Paid a premium price for Products that were not what Defendant represented;

c.  Were deprived of the benefit of the bargain because the Products they purchased were different from what Defendant warranted; and

d.  Were deprived of the benefit of the bargain because the Products they purchased had less value than what Defendant represented.

62.     Plaintiff and the Class Members paid for Products that were "natural" but received Products that were not "natural." The products Plaintiff and the Class Members received were worth less than the products for which they paid.

63.     Based on Defendant's misleading and deceptive representations, Defendant were able to, and did, charge a premium price for the Products over the cost of competitive products not bearing the misrepresentations.

64.     Plaintiff and the Class Members paid money for the Products. However, Plaintiff and the Class Members did not obtain the full value of the advertised Products due to Defendant's misrepresentations and omissions. Plaintiff and the Class Members purchased, purchased more of, and/or paid more for, the Products than they would have had they known the truth about the Products. Consequently, Plaintiff and the Class Members have suffered injury in fact and lost money as a result of Defendant's wrongful conduct.

65.     Defendant knew that consumers will pay more for a product marketed as "natural," and intended to deceive Plaintiff and putative Class Members by labeling and marketing the Products as purportedly natural products.

66.     Plaintiff and Class Members paid for the Products over and above comparable products that did not purport to be "natural." Given that Plaintiff and Class Members paid for the Products based on Defendant's misrepresentations that they are "natural," Plaintiff and Class Members suffered an injury in the amount paid.

67.     Additionally, Plaintiff and Class Members paid a premium for the Products over and above comparable products that did not purport to be "natural." Given that Plaintiff and Class Members paid a premium for the Products based on Defendant's misrepresentations that they are "natural," Plaintiff and Class Members suffered an injury in the amount of the premium paid.

## CLASS DEFINITIONS AND ALLEGATIONS

68.     Plaintiff, pursuant to Federal Rule of Civil Procedure 23, brings this action on behalf of the following classes (collectively, the "Class," "Classes," and "Class Members"):

    a.  Multi-State Consumer Class: All persons in the States of California, Florida, Illinois, Maryland, Massachusetts, Minnesota, Missouri, New Jersey, New York, Pennsylvania, Oregon, and Washington who purchased the Products.[18]

---

[18] The States in the Multi-State Consumer Class are limited to those States with similar consumer protection laws under the facts of this case: California (Cal. Bus. & Prof. Code § 17200, et seq.); Florida (Fla. Stat. § 501.201, et seq.); Illinois (815 ILCS 505/1, et seq.); Maryland (Md. Com. Law §§ 13-301); Massachusetts (Mass. Gen. Laws Ch. 93A, et seq.); Michigan (Mich. Comp. Laws § 445.901, et seq.); Minnesota (Minn. Stat. § 325F.67, et seq.); Missouri (Mo. Rev. Stat. 407.010, et seq.); New Jersey (N.J. Stat. § 56:8-1, et seq.); New York (N.Y. Gen. Bus. Law § 349, et seq.); Pennsylvania (73 Pa. Stat. Ann. §§ 201-1 et seq.); Oregon (Or. Rev. Stat. §§ 646.605, et seq.); and Washington (Wash Rev. Code § 19.86.010, et seq.).

b.  Maryland Class: All persons who purchased Defendant's Products within the State of Maryland and within the applicable statute of limitations period; and

c.  Nationwide Class: All persons who purchased Defendant's Products within the United States and within the applicable statute of limitations period.

69.    Excluded from the Classes are Defendant, its parents, subsidiaries, affiliates, officers, and directors, those who purchased the Products for resale, all persons who make a timely election to be excluded from the Classes, the judge to whom the case is assigned and any immediate family members thereof, and those who assert claims for personal injury.

70.    The members of the Classes are so numerous that joinder of all Class Members is impracticable. Defendant has sold, at a minimum, millions of units of the Products to Class Members.

71.    There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the putative classes that predominate over questions that may affect individual Class Members include, but are not limited to the following:

a.  whether Defendant misrepresented material facts concerning the Products on the label of every product;

b.  whether Defendant's conduct was unfair and/or deceptive;

    c.   whether Defendant has been unjustly enriched as a result of the unlawful, fraudulent, and unfair conduct alleged in this Complaint such that it would be inequitable for Defendant to retain the benefits conferred upon them by Plaintiff and the Classes;

    d.   whether Plaintiff and the Class are entitled to equitable and/or injunctive relief;

    e.   whether Defendant breached express and implied warranties to Plaintiff and the Classes;

    f.   whether Plaintiff and the classes have sustained damages with respect to the claims asserted, and if so, the proper measure of their damages.

72.    Plaintiff's claims are typical of those of other Class Members because Plaintiff, like all members of the Classes, purchased Defendant's Products bearing the natural representations and Plaintiff sustained damages from Defendant's wrongful conduct.

73.    Plaintiff will fairly and adequately protect the interests of the Classes and has retained counsel that is experienced in litigating complex class actions. Plaintiff has no interests which conflict with those of the classes.

74.    A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other Class Members are relatively small compared to the burden and expense that would be required to individually litigate

their claims against Defendant, making it impracticable for Class Members to individually seek redress for Defendant's wrongful conduct. Even if Class Members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

75.    The prerequisites to maintaining a class action for equitable relief are met as Defendant has acted or refused to act on grounds generally applicable to the classes, thereby making appropriate equitable relief with respect to the classes as a whole.

76.    The prosecution of separate actions by members of the classes would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another might not. Additionally, individual actions could be dispositive of the interests of the classes even where certain Class Members are not parties to such actions.

## CAUSES OF ACTION

### COUNT I
### Violation of the Maryland Consumer Protection Act,
### Maryland Code, Commercial Law Article, § 13-101, *et seq*.

77.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

78.    Plaintiff brings this Count individually and on behalf of the members of the Maryland Class.

79.    This cause of action is brought pursuant to the Maryland Consumer Protection Act ("MCPA"). MD Code Ann. §§ 13-101, *et seq*. The express purpose of the MCPA is to "set certain minimum statewide standards for the protection of consumers across the State" because "consumer protection is one of the major issues which confront all levels of government, and that there has been mounting concern over the increase of deceptive practices in connection with sales of merchandise, real property, and services and the extension of credit. MD Code Ann. §§ 13-102.

80.    Plaintiff is a "consumer" as defined by the MCPA. MD Code Ann. §§ 13- 101(c)(1).

81.    Defendant's Products are "consumer goods" and "merchandise" within the meaning of the MCPA. MD Code Ann. §§ 13-101(d)(1)-(2),(f).

82.    Defendant is a "merchant" engaged in sales, advertising, and commerce within the meaning of the MCPA. MD Code Ann. §§ 13-101.

83.    The MCPA declares certain actions as unlawful "unfair or deceptive trade practices." MD Code Ann. §§ 13-102. Defendant's unfair or deceptive trade practice in violation of the MCPA includes making "[f]alse, falsely disparaging, or

misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers"; representing that its "goods and services have a sponsorship, approval, accessory, characteristic, ingredient, use, benefit, or quantity which they do not have"; advertising consumer goods without the intent to sell them as advertised; and engaging in "[d]eception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same in connection" with the promotion or sale of its consumer goods and services. MD Code Ann. §§ 13-103.

84.     As set forth above, Defendant's "natural" claims are deceptive, and misleading to consumers because Defendant's Products are not "natural" because they contain synthetic ingredients.

85.     Plaintiff has standing to pursue this claim because she has been injured by virtue of suffering a loss of money and/or property as a result of the wrongful conduct alleged herein. Plaintiff would not have purchased Defendant's Products (or paid a premium for them) had she known the truth. As a direct result of Defendant's misrepresentations of material facts, Plaintiff and Maryland Class Members did not obtain the value of the products for which they paid; were induced to make purchases that they otherwise would not have; and lost their ability to make informed and reasoned purchasing decisions.

86. The damages suffered by Plaintiff and the Maryland Class were directly and proximately caused by the deceptive, misleading and unfair practices of Defendant as described above.

87. Plaintiff and the Maryland Class make claims for actual damages, statutory damages, attorney's fees and costs. MD Code Ann. §§ 13-408.

<div align="center">

**COUNT II**
**Unjust Enrichment**
**(under Illinois law)**

</div>

88. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

89. Plaintiff brings this claim individually and on behalf of the members of the proposed Classes against the Defendant.

90. At all times relevant hereto, Defendant deceptively marketed, advertised, and sold merchandise to Plaintiff and the Classes.

91. Plaintiff and members of the Classes conferred upon Defendant nongratuitous payments for the Products that they would not have if not for Defendant's deceptive advertising and marketing. Defendant accepted or retained the nongratuitous benefits conferred by Plaintiff and members of the Classes, with full knowledge and awareness that, as a result of Defendant's deception, Plaintiff and members of the Classes were not receiving a product of the quality, nature, fitness, or value that had been represented by Defendant and reasonable consumers would have expected.

92.     Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff's and Class Members' purchases of the Products. Retention of those monies under these circumstances is unjust and inequitable because of Defendant's misrepresentations about the Products, which caused injuries to Plaintiff and Class Members because they would not have purchased the Products under the same terms if the true facts had been known.

93.     Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiff and members of the Classes is unjust and inequitable, Defendant must pay restitution to Plaintiff and members of the Classes for its unjust enrichment, as ordered by the Court.

## COUNT III
## Violation of State Consumer Protection Statutes

94.     Plaintiff repeats and realleges each and every allegation above as if set forth herein.

95.     Plaintiff brings this Count individually and on behalf of the members of the Multi-State Consumer Class.

96.     The Consumer Protection Acts of the States in the Multi-State Consumer Class prohibit the use of unfair or deceptive business practices in the conduct of trade or commerce.

97.     Defendant intended that Plaintiff and the other members of the Multi-State Consumer Class would rely upon their deceptive conduct, and a reasonable person would in fact be misled by its deceptive conduct.

98.     As a result of the Defendant's use or employment of unfair or deceptive acts or business practices, Plaintiff, and other members of Multi-State Consumer Class, have sustained damages in an amount to be proven at trial.

## RELIEF DEMANDED

WHEREFORE, Plaintiff, individually and on behalf the Class Members, seeks judgment and relief against Defendant, as follows:

a)  For an order declaring: (i) this is a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the proposed Classes described herein; and (ii) appointing Plaintiff to serve as a representative for the Classes and Plaintiff's counsel to serve as Class Counsel;

b)   For an order enjoining Defendant from continuing to engage in the unlawful conduct set forth herein;

c)  For an order awarding restitution of the monies Defendant wrongfully acquired by their illegal and deceptive conduct;

d)  For an order requiring disgorgement of the monies Defendant wrongfully acquired by their illegal and deceptive conduct;

e)  For compensatory and punitive damages, including actual and statutory damages, arising from Defendant's wrongful conduct and illegal conduct;

26

f) For an award of reasonable attorneys' fees and costs and expenses

   incurred in the course of prosecuting this action; and

g) For such other and further relief as the Court deems just and proper.

### **JURY TRIAL DEMAND**

Plaintiff demands a jury trial on all causes of action so triable.

Dated: August 17, 2023

<div style="margin-left:40%">

**THE KEETON FIRM LLC**

/s/ Steffan T. Keeton
Steffan T. Keeton, Esq.
100 S Commons Ste 102
Pittsburgh PA 15212
Tel: (888) 412-5291
stkeeton@keetonfirm.com


*Counsel for Plaintiff and the Proposed Class*

</div>