**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**Northern Division**

| | | |
|---|---|---|
| Oluwakemi Adewol, on behalf of herself, and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 1:23-CV-00509-GLR |
| v. | ) ) | |
| TGINESIS LLC, | ) ) | |
| Defendant. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT TGINESIS LLC'S MOTION TO DISMISS**
**PLAINTIFF'S AMENDED COMPLAINT**

## TABLE OF CONTENTS

**Page**

I.   INTRODUCTION .................................................................................................... 1

II.  STATEMENT OF FACTS ...................................................................................... 2

    A.   TGIN® ........................................................................................................ 2

    B.   Plaintiff's Allegations ............................................................................... 3

    C.   The Label At Issue ..................................................................................... 5

III. ARGUMENT ........................................................................................................... 8

    A.   Plaintiff Lacks Article III Standing to Seek Injunctive Relief ............. 8

    B.   Plaintiff Fails to State a Claim ............................................................... 10

        1.   Plaintiff Fails to State a Claim Under the MCPA ................................ 11

            a)   *Reasonable Consumers Would Not Share Plaintiff's Implausible Interpretation of the "Thank God It's Natural®" Brand Name* .............................................. 11

            b)   *Plaintiff Fails to Adequately Allege A Cognizable Injury* ......................................................... 25

        2.   Plaintiff Fails to State a Claim for Unjust Enrichment ...................... 27

        3.   Plaintiff's Catch-All Claim Under Other States' Laws Also Fails ....................................................................................... 28

IV.  CONCLUSION ..................................................................................................... 30

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Agomuoh v. PNC Fin. Servs. Grp.*,
  No. GJH-16-1939, 2017 WL 657428 (D. Md. Feb. 16, 2017) ...............................................11

*Allee v. Medrano*,
  416 U.S. 802 (1974)...............................................................................................................29

*Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*,
  367 F.3d 212 (4th Cir. 2004) ..................................................................................................3

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997)...............................................................................................................29

*Aronberg v. Fed. Trade Comm'n*,
  132 F.2d 165 (7th Cir. 1942) .................................................................................................12

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...............................................................................................................10

*Axon v. Citrus World, Inc., et al.*,
  No. 8-cv-4162 (ARR) (RML) 2019 WL 8223527 (E.D.N.Y. Jan. 14, 2019).........................4

*Axon v. Florida's Natural Growers, Inc., et al.*,
  813 F. App'x 701 (2d Cir. 2020) ......................................................................................14, 3

*Bakery & Confectionary Union & Indus. Int'l Pension Fund v. Just Born II, Inc.*,
  888 F.3d 696 (4th Cir. 2018) .................................................................................................11

*Baldwin v. Star Sci., Inc.*,
  78 F. Supp. 3d 724 (N.D. Ill. 2015) ......................................................................................29

*Becerra v. Dr. Pepper/Seven Up, Inc.*,
  945 F.3d 1225 (9th Cir. 2019) ...............................................................................................19

*Beiersdorfer v. Larose*,
  No. 20-3557, 2021 WL 3702211 (6th Cir. Aug. 20, 2021) .....................................................9

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)...............................................................................................................10

*Bezmenova v. Ocwen Fin. Corp.*,
  No. 8:13-CV-00003-AW, 2013 WL 3863948 (D. Md. July 23, 2013) ..................................13

*Boss v. Kraft Heinz Co.*,
  No. 21-CV-06380, 2023 WL 5804234, at *2 (N.D. Ill. Sept. 7, 2023) ...............................25

*Branhaven, LLC v. BeefTek, Inc.*,
  965 F. Supp. 2d 650, 664 (D. Md. 2013) ...............................................................................27

*In re Bridgestone/Firestone, Inc.*,
  288 F.3d 1012 (7th Cir. 2002) ...............................................................................................30

*Nemphos ex rel. C.G.N. v. Nestle USA, Inc.*,
  No. GLR-12-2718, 2013 WL 4501308 (D. Md. Aug. 21, 2013)..........................................11

*Carney v. Adams*,
  141 S. Ct. 493 (2020).................................................................................................................8

*In re Carrier IQ, Inc.*,
  78 F. Supp. 3d 1051 (N.D. Cal. 2015) ....................................................................................29

*Chambers v. King Buick GMC, LLC*,
  43 F. Supp. 3d 575 (D. Md. 2014)..........................................................................................26

*Cheslow v. Ghirardelli Chocolate Co.*,
  445 F. Supp. 3d 8 (N.D. Cal. 2020) ........................................................................................20

*Chiappetta v. Kellogg Sales Co.*,
  No. 21-CV-3545, 2022 WL 602505 (N.D. Ill. Mar. 1, 2022)................................................20

*Citaramanis v. Hallowell*,
  328 Md. 142 (Md. 1992)..........................................................................................................25

*City of Los Angeles v. Lyons*,
  461 U.S. 95 (1983).....................................................................................................................7

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013)...................................................................................................................7

*In re Ductile Iron Pipe Fittings ("DIPF") Indirect Purchaser Antitrust Litig.*,
  No. 12-169, 2013 WL 5503308 (D.N.J. Oct. 2, 2013) ..........................................................29

*Elend v. Basham*,
  471 F.3d 1199 (11th Cir. 2006) ................................................................................................9

*Eshelby v. L'Oréal USA*,
  No. 22-cv-1396, 2023 WL 2647958 (S.D.N.Y. Mar. 27, 2023)............................................16

*F.T.C. v. Washington Data Res.*,
  856 F. Supp. 2d 1247 (M.D. Fla. 2012)............................................................................12, 19

*Fink v. Time Warner Cable*,
   714 F.3d 739 (2d Cir. 2013)....................................................................................19

*Galante v. Ocwen Loan Servicing LLC*,
   No. CIV.A. ELH-13-1939, 2014 WL 3616354 (D. Md. July 18, 2014) ................................11

*Gasser v. Kiss My Face, LLC*,
   No. 17-CV-01675-JSC, 2018 WL 4847071, at *4 (N.D. Cal. Apr. 4, 2018) .........................23

*Gouwens v. Target Corp.*,
   No. 3:22-CV-50016, 2022 WL 18027524, at *3 (N.D. Ill. Dec. 30, 2022) ..........................20

*Guzman v. Walmart Inc.*,
   No. 22-CV-3465, 2023 WL 3455319 (N.D. Ill. May 15, 2023).............................................23

*Hairston v. S. Beach Bev. Co.*,
   No. 12-CV-1429-JFW, 2012 WL 1893818 (C.D. Cal. May 18, 2012) ..................................18

*Hassan v. Lenovo*,
   No. 5:18-CV-105-BO, 2019 WL 123002 (E.D.N.C. Jan. 7, 2019) ..........................................9

*Henderson v. Gruma Corp.*,
   No. 10-cv-04173, 2011 WL 1362188 (C.D. Cal. Apr. 11, 2011) ..........................................23

*Howard v. Bayer Corp.*,
   No. 4:10-cv-1662-DPM, 2011 WL 13224118 (E.D. Ark. July 22, 2011) ..............................18

*Hughes v. Ester C Co.*,
   330 F. Supp. 3d 862, 871 (E.D.N.Y. 2018) ........................................................................12

*Ibarrola v. Kind, LLC*,
   83 F. Supp. 3d 751 (N.D. Ill. 2015) ...................................................................................19

*Jeandron v. Bd. of Regents of Univ. Sys. of Maryland*,
   510 F. App'x 223 (4th Cir. 2013)..........................................................................................3

*Jones v. Koons Automotive, Inc.*,
   752 F. Supp. 2d 670 (D. Md. 2010)....................................................................................26

*Kelly v. Novastar Mortg., Inc.*,
   No. CV AW-06-2616, 2006 WL 8457108, at *2 (D. Md. Dec. 29, 2006) ............................27

*Kennedy v. Mondelez Glob. LLC*,
   No. 19-cv-302, 2020 WL 4006197 (E.D.N.Y. July 10, 2020)...............................................23

*Knapp v. Zoetis, Inc.*,
   No. 20-cv-191, 2021 WL 1225970 (E.D. Va. March 31, 2021).............................................29

*Kuenzig v. Kraft Foods, Inc.*,
    No. 8:11-CV-838-T-24 TGW, 2011 WL 4031141 (M.D. Fla. Sept. 12, 2011)......................16

*Lab. Corp. of Am. V. Hood*,
    911 A.2d 841, 845 (Md. Ct. App. 2006) ................................................................................28

*Lanovaz v. Twinings N. Am., Inc.*,
    726 F. App'x. 590 (9th Cir. 2018) ..........................................................................................9

*Lemke v. Kraft Heinz Food Co.*,
    No. 21-CV-278-WMC, 2022 WL 1442922 (W.D. Wis. May 6, 2022)..................................22

*Lisowski v. Henry Thayer Co.*,
    501 F. Supp. 3d 316 (W.D.P.A. 2020).............................................................................15, 16

*Lloyd v. Gen. Motors Corp.*,
    397 Md. 108 (2007) ..............................................................................................................26

*Lokey v. CVS Pharmacy, Inc.*,
    20-CV-04782-LB, 2020 WL 6822890, *5 (N.D. Cal. Nov. 20, 2020 ....................................12

*Loving v. U.S.*,
    125 F.3d 862 (10th Cir. 1997) ................................................................................................9

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)............................................................................................................7, 8

*Luskin's Inc. v. Consumer Protection Div.*,
    353 Md. 335 (Ct. App. 1999)..........................................................................11, 12, 14, 19

*Margolis v. Sandy Spring Bank*,
    221 Md. App. 703 (2015) .....................................................................................................12

*Matthews v. Polar Corp.*,
    No. 22-CV-649, 2023 WL 2599871 (N.D. Ill. Mar. 22, 2023)...............................................16

*McGinity v. Procter & Gamble Co.*,
    69 F.4th 1093 (9th Cir. 2023) ...........................................................................17, 22, 23, 25

*McGraw v. Loyola Ford, Inc.*,
    723 A.2d 502 (Md. Ct. App. 1999)........................................................................................13

*McKinnis v. Kellogg USA*,
    2007 WL 4766060 (C.D. Cal. Sept. 19, 2007) ......................................................................16

*Metague v. Woodbolt Distribution, LLC*,
    No. 8:20-CV-02186-PX, 2021 WL 2457153 (D. Md. June 16, 2021) .........................9, 10, 28

*Miller v. Sanofi Consumer Healthcare*,
   No. 22 CIV. 574 (LLS), 2023 WL 112553 (S.D.N.Y. Jan. 5, 2023)......................................19

*Morales v. Kimberly-Clark Corp*.,
   No. 18-CV-7401 (NSR), 2020 WL 2766050, at *6 (S.D.N.Y. May 27, 2020) .....................23

*Muller v. Blue Diamond Growers,*
   No. 4:22-CV-707 RWS, 2023 WL 4579241 (E.D.Mo. July 18, 2023) ................................16

*Mustakis v. Chattern*,
   No. 20-cv-5895, 2022 WL 714095 (E.D.N.Y. Mar. 9, 2022)..........................................14, 23

*O'Shea v. Littleton*,
   414 U.S. 488 (1974)..........................................................................................................8

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*,
   85 N.Y.2d 20 (N.Y. Ct. App. 1995)....................................................................................13

*Palmer v. CVS Health*,
   No. CV CCB 17-938, 2019 WL 6529163 (D. Md. Dec. 4, 2019) .........................................8

*Pelayo v. Nestle U.S.A.*,
   989 F. Supp. 2d 973 (C.D. Cal. 2013) .................................................................................22

*Prescott v. Rite Aid Corporation*,
   No.22-cv-05798-VC, 2023 WL 2753899 (N.D. Cal. Apr. 3, 2023)......................................19

*Ramsay v. Sawyer Prop. Mgmt. of Md., LLC*,
   No. 1673 Sept. Term 2015, 2016 WL 6583892 (Md. Ct. Spec. App. Nov. 4,
   2016) ..................................................................................................................................12

*Rapp v. Green Tree Servicing, LLC*,
   302 F.R.D. 505 (D. Minn. 2014)........................................................................................27

*Richardson v. Edgewell Pers. Care, LLC,*
   No. 21-CV-08275 (PMH), 2023 WL 1109646, at *6 (S.D.N.Y. Jan. 30, 2023) ...................17

*Ruiz v. Owlet Baby Care, Inc.,*
   No. 2:19-CV-00252, 2021 WL 3370259, at *4 (D. Utah Aug. 3, 2021) ..............................23

*Rivera v. Navient Sols., LLC*,
   No. 20-CV-1284 (LJL), 2020 WL 4895698 (S.D.N.Y. Aug. 19, 2020)...............................18

*Sarr v. BEF Foods, Inc.*,
   No. 18-cv-6409, 2020 WL 729883 (E.D.N.Y. Feb. 13, 2020) ...............................16

*Schaller v. U.S. Soc. Sec. Admin.*,
   844 Fed. Appx. 566 (3d Cir. 2021).........................................................................9

*Shepard v. Burson,*
50 A.3d 567, 576 (Md. Ct. App. 2012) ..............................................................24

*Simone v. VSL Pharm.,*
TDC-15-1356, 2017 WL 66323, *2 (D.Md Jan. 5, 2017) ....................................28

*Spaulding v. Wells Fargo Bank, N.A.,*
714 F.3d 769 (4th Cir. 2013) ............................................................................10

*State Farm Mut. Auto. Ins. Co. v. Carefree Land Chiropractic, LLC,*
No. 18-CV-1279, 2018 WL 6514797 (D. Md. Dec. 11, 2018)..............................28

*Steinberg v. Icelandic Provisions, Inc.,*
No. 22-15287, 2023 WL 3918257 (9th Cir. June 9, 2023).....................................16

*Sugawara v. Pepsico, Inc.,*
No. 08-cv-01335-MCE-JFM, 2009 WL 1439115 (E.D. Cal. May 21, 2009) .........20

*Summers v. Earth Island Inst.,*
555 U.S. 488 (2009)........................................................................................7, 8

*Tavernaro v. Pioneer Credit Recovery, Inc.,*
43 F.4th 1062 (10th Cir. 2022) ...........................................................................12

*Thompson v. Bayer Corp.,*
No. 4:07CV00017 JMM, 2009 WL 362982 (E.D. Ark. Feb. 12, 2009)................27

*Walker v. Bank of Am. Corp.,*
No. 8:18-CV-02466-PWG, 2019 WL 3766824 (D. Md. Aug. 8, 2019)................10

*Wallace v. Ocean Loan Service, LLC.,*
No. PJM 16-2750, 2016 WL 6476287 (D. Md. Nov. 2, 2016)..............................12

*Warren v. Coca-Cola Co.,*
No. 22-cv-6907 (CS), 2023 WL 3055196 (S.D.N.Y. Apr. 21, 2023)....................19

*Washington Cnty. Bd. of Educ. v. Mallinckrodt ARD, Inc.,*
431 F. Supp. 3d 698 (D. Md. 2020).....................................................................27

*Weaver v. Champion Petfoods USA Inc.,*
3 F.4th 927 (7th Cir. 2021) ................................................................................23

*Xi Chen Lauren v. PNC Bank, N.A.,*
296 F.R.D. 389 (W.D. Pa. 2014) ........................................................................29

**Statutes**

Maryland Consumer Protection Act, MD Code Ann. § 13–101, *et seq*. ............................... passim

**Other Authorities**

75 Fed. Reg. 63552 (Oct. 15, 2010)...........................................................................................21

Fed. R. Civ. P. 9(b) ........................................................................................................... passim

Fed. R. Civ. P. 12(b)(6)...........................................................................................................10

Fed. R. Civ. P. 82 ....................................................................................................................29

Fed. R. Evid. 201(b)...................................................................................................................3

21 C.F.R. pt. 101.4(a) ..........................................................................................................7, 25

21 C.F.R. pt. 184.1033..............................................................................................................7

Defendant, TGINESIS LLC ("TGIN"), by and through its undersigned counsel, respectfully requests pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(6), and 9(b) to dismiss Plaintiff Oluwakemi Adewol's ("Plaintiff") Amended Complaint, and submits this memorandum of law in support of its Motion to Dismiss.

## I.    INTRODUCTION

This case concerns pink, teddy bear-shaped gummy vitamins sold by TGIN, or "Thank God It's Natural®," a haircare brand that specializes in moisturizing products for black, "natural," textured hair. The gummy vitamins are called "Wild-Growth Vitamins Hair Skin + Nails Gummies" (the "Gummies" or the "Product"), and the label explains they "support healthy hair growth, stronger nails, and supple skin." (*See* Am. Compl. at ¶ 43.) The Gummies are sold by beauty retailers alongside TGIN's moisturizing haircare products for natural hair.

Plaintiff claims that TGIN markets the Gummies as containing only natural ingredients and being free from synthetic or artificial ingredients. (*Id*. at ¶¶ 7, 45.) However, no such statements appear anywhere on the packaging. Instead, the sole reference to the word "natural" on the Product's label is contained within the Product's brand name, written in fine, pale print, and followed immediately by the symbol for a registered trademark (®) and an asterisk that directs the reader to another side of the label. (*See Id*. at ¶¶ 43, 44.)

Plaintiff urges the Court to read the word "natural" in a vacuum and to interpret it as an affirmative misrepresentation about the Product's ingredients. (*Id*. at ¶¶ 7, 45.) She claims the Product is not "natural" because it contains two allegedly synthetic ingredients, citric acid and Allura Red (E129 FD&C Red No. 40) ("Red 40"), both of which are disclosed on the label's ingredient list. (*Id.* at ¶¶ 10-11, 47-48.) But Plaintiff's claims rest on viewing the word "natural" in isolation, and ignoring the packaging as a whole and the context behind the brand name. Because

1

no reasonable consumer would share in her subjective belief that the Product's labeling is deceptive, her claims fail as matter of law.

Even if Plaintiff could overcome that fatal pleading hurdle, her claims still fail. First, the Court must dismiss Plaintiff's claim for injunctive relief because she has alleged that she will not purchase the product as-is in the future, precluding any risk of future harm. Additionally, Plaintiff's claim under the Maryland Consumer Protection Act ("MCPA") fails because she fails to adequately plead a cognizable injury. Plaintiff also fails to sufficiently plead her claims for "Unjust Enrichment" (Count II) and "Violation of State Consumer Protection Statutes" (Count III), as discussed further herein.

## II.     STATEMENT OF FACTS

### A.     TGIN®

TGIN is one of the leading textured haircare brands in the country. TGIN celebrates natural curls and coils and is specially formulated to nourish and moisturize natural hair.[1] Launched in 2013, TGIN was founded by Chris'Tia Donaldson, who came up with the idea for the company when she transitioned away from chemical relaxers (*i.e.* hair straightening agents) and embraced her natural hair, but was frustrated by the lack of products on the market for kinky, curly, and wavy hair. This experience prompted her to start TGIN and even write a book: "Thank God I'm Natural: The Ultimate Guide for Natural Hair."

Marketing for TGIN products celebrates the natural curls of its users. For example, beauty and cosmetics retailer Ulta Beauty, where Plaintiff alleges she purchased the Gummies, uses the following banner in connection with the TGIN brand:

---

[1] Natural hair is defined as thick and curly hair that is not straightened or loosened with the use of chemicals. *See* Natural Hair, CAMBRIDGE ADVANCED LEARNER'S DICTIONARY & THESAURUS (CAMBRIDGE UNIVERSITY PRESS), *available at* https://dictionary.cambridge.org/us/dictionary/english/natural-hair.



*See* https://www.ulta.com/brand/tgin.[2]

TGIN is sold in third-party retail stores, including Ulta Beauty, Target, Sally Beauty, and CVS, in-store and online, and is often located in store and website departments or sections that are dedicated to curly and/or textured hair.[3] The Gummies at issue in this case are sold alongside TGIN's various haircare products for natural hair.

### B.    Plaintiff's Allegations

The crux of Plaintiff's claims is that TGIN falsely advertises the Gummies as only containing "natural ingredients." Specifically, she vaguely claims, "the principal display panel of [the Gummies[4]] states [they] are 'Natural,'" and she alleges that they are not natural because they contain two "synthetic" ingredients: Red 40 and citric acid. (*Id.* at ¶¶ 6, 10, 11.) The only reference to the word "natural" anywhere on the product label is within the brand name, "Thank God It's Natural ®*."

---

[2] Plaintiff alleges that she purchased the Product from Ulta Beauty. On a motion to dismiss, the Court may consider extrinsic evidence that is related to or completes evidence already introduced by the plaintiff if it was integral to and explicitly relied on in the complaint and if the plaintiff does not challenge its authenticity. *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.,* 367 F.3d 212, 234 (4th Cir. 2004). Further, A court may take judicial notice of information publicly announced on a website, so long as the website's authenticity is not in dispute and "it is capable of accurate and ready determination." Fed. R. Evid. 201(b); *Jeandron v. Bd. of Regents of Univ. Sys. of Maryland*, 510 F. App'x 223, 227 (4th Cir. 2013).

[3] For instance, Ulta Beauty markets TGIN among it's "Featured Brands" for "Curly Textured Hair." *See* https://www.ulta.com/discover/curly-textured-hair-products. TGIN is also marketed by Ulta Beauty as a "Black Owned and Founded" brand. *See* https://www.ulta.com/featured/blackownedbrands.

[4] Although Plaintiff refers to "vitamin products," Plaintiff clarifies that the only Product included in this definition is TGIN's Wild Growth Vitamins Hair, Skin + Nails Gummies. (*See* Am. Complaint at ¶ 1, n.1.)

3

Plaintiff allegedly bought the Gummies in May 2022 at an Ulta Beauty store in Howard County, Maryland for $19.99. (*Id.* at ¶ 20.a.) Plaintiff does not allege exactly when the purchase took place. She claims she "relied on the representations, including but not limited to, that the Products were natural.'" (*Id.* at ¶ 20.d.) Plaintiff fails to point to any specific representations made by TGIN or apparent on the labeling on the Product, and instead vaguely alleges that she "read and relied upon the representation that the Product was 'NATURAL,' which appears on the front label of the Product." (*Id.* at ¶ 20.e.) As noted *infra,* the only use of the word natural on the Product's label is within the Product's brand name. Plaintiff alleges that she understood "these representations" to mean the Product contained no synthetic ingredients. (*Id.* at ¶ 20.f.)

Plaintiff claims to have "paid a premium for the [Gummies] over and above comparable products that did not purport to be 'natural.'" (*Id.* at ¶¶ 60, 61.b., 63, 67.) However, Plaintiff does not identify any allegedly "competitive products" that retail for a lower price, nor quantify the difference in price between what she alleges she paid for the Gummies and comparable alternatives that "[do] not purport to be 'natural.'" (*Id.* at ¶ 67.) Plaintiff also does not allege that the Gummies she purchased were not worth what she paid. Instead, she vaguely asserts (in conclusory fashion) that natural products are "worth more than products that contain artificial ingredients" and consumers pay a premium for products labeled 'natural' over products that contain synthetic ingredients. (*Id.* at ¶ 30.)

Plaintiff purports to bring a claim under the MCPA individually and on behalf of a putative class of Maryland consumers who bought the Gummies within the state of Maryland. (*Id.* at ¶ 68.a; Count I.) She also brings: (1) a claim for unjust enrichment under Illinois law, "individually and on behalf of the members of the proposed Classes"; and (2) a claim for purported violations of at least 11 other state consumer protection statutes, which plaintiff brings "individually and on behalf

of the members of the Multi-State Consumer Class."[5] (*Id*. at Counts II, III.) Plaintiff seeks money

damages, restitution, and injunctive relief.

### C.      The Label At Issue

Plaintiff does not identify any claims on the packaging of the Product that represent to

consumers that the Product contains "only natural" or zero synthetic/artificial ingredients. Instead,

Plaintiff isolates the sole usage of the word "natural" on the Product's label: TGIN's use of the

word "natural" in its brand name, which appears: (1) within the product's logo; (2) in small, pale

text, below large lettering that spells out TGIN; (3) followed immediately by a trademark

registration symbol; (4) followed, in turn, by an asterisk; and (5) separated from the Product's

name and contents by a horizontal line (*see* Am. Compl. at ¶ 43.):



---

[5] Plaintiff defines her "Multi-State Consumer Class" by referring to Maryland and 11 other states (i.e., Florida, Illinois, Maryland, Massachusetts, Minnesota, Missouri, New Jersey, New York, Pennsylvania, Oregon, and Washington). (Am. Compl. ¶ 68.a.) In a footnote, Plaintiff also cites the law of an additional state (Michigan) to argue that the "States in the Multi-State Consumer Class are limited to those States with similar consumer protection laws under the facts of this case." (*Id*. ¶ 68.a, n.18.) It is unclear from the Amended Complaint whether Plaintiff intends to include Michigan consumers among those in the "Multi-State Consumer Class."

Several statements on the label indicate that, like TGIN's other products, the Product is intended for hair: the "Wild Growth" product name; the "Hair Skin + Nails Gummies" descriptor; and the statement that the Product "supports healthy hair growth." The Gummies themselves, which can be seen through the clear bottle, are pink and shaped like teddy bears. (*See id.* ¶ 43.)

On a part of the label immediately contiguous to and to the right of the principal display is a panel that includes nutritional information and a full list of the Product's ingredients: [6]



7

Plaintiff only complains about two ingredients, Red 40 and citric acid, and appears to concede that the vast majority of ingredients in the Product are "natural." Red 40, as the last-listed

---

[6] The Product's label is comprised of one, continuous wrap-around sticker.
[7] The image of the Product's entire nutritional label is sourced from Ulta Beauty's website. https://www.ulta.com/p/wild-growth-vitamins-hair-skin-nails-gummies-pimprod2024539?sku=2579821 (last accessed June 26, 2023).

ingredient, is the most minor ingredient in the product.[8] Meanwhile, citric acid naturally exists in fruits and vegetables and is classified by the FDA as a "naturally occurring constituent of plant and animal tissues." 21 C.F.R. 184.1033. While Plaintiff alleges (in conclusory fashion) that the citric acid present in the Product is synthetic because citric acid *may be* manufactured in a lab in some cases (Am. Compl. ¶ 48), Plaintiff does not allege any facts to support her claim that the citric acid within the Gummies is not natural, and ignores the fact that citric acid can be naturally derived. *See* 21 C.F.R. 184.1033.[9]

Plaintiff also does not allege (nor can she):

- Any standalone use of the word "natural" outside the Product's brand name;

- Any promises that the product is "all natural," "pure," or "100% natural";

- Any representations that the Product is "free of" or has zero synthetic or artificial ingredients;

- Any promises about where the Product's ingredients are sourced;

- Any large font emphasizing a "natural" claim;

- Any promises as to the specific amounts or proportions of natural ingredients; or

- Any imagery or use of colors that creates an association between the Product and nature (e.g., green font, leaf or water droplet logos, etc.).

As demonstrated below, when viewed as a whole, the Gummies' label does not support Plaintiff's claims against TGIN.

---

[8] In accordance with FDA regulations, the ingredients on the product's label are listed in descending order of predominance. 21 C.F.R. pt. 101.4(a).
[9] Plaintiff asks this court to make an inferential leap that, because citric acid *may be* manufactured in some cases, the Product at issue here contains synthetic citric acid. But to satisfy the pleading standards, Plaintiff needs to draw a connection between the process of manufacturing citric acid and the actual practice used by TGIN. *See Tarzian v. Kraft Heinz Foods Co.*, No. 18 C 7148, 2019 WL 5064732, at *4 (N.D. Ill. Oct. 9, 2019).

## III.     ARGUMENT

### A.     Plaintiff Lacks Article III Standing to Seek Injunctive Relief

A party seeking to invoke the Court's jurisdiction bears the burden of demonstrating that it has standing to sue. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). In the context of a request for injunctive relief, the "threatened injury must be *certainly impending* to constitute injury in fact" and "allegations of *possible* future injury are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (internal quotation marks and alteration omitted) (emphases added); *see also Summers v. Earth Island Inst*., 555 U.S. 488, 493 (2009) (the injury must be "actual and imminent, not conjectural or hypothetical"); *City of Los Angeles v. Lyons*, 461 U.S. 95, 102, 111 (1983); *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974) (plaintiff seeking injunction must show a "real and immediate threat of repeated injury").

In the landmark case on this issue, *Lujan v. Defenders of Wildlife*, the United States Supreme Court considered whether plaintiffs had standing to seek an injunction against the funding of activities that threatened certain species' habitats. The Court held that the plaintiffs' allegation that they would visit affected project sites in Egypt and Sri Lanka "some day" did not meet the requirement that their injury be "imminent." *Id*. at 563–64 (their "profession of an inten[t] ... is simply not enough."). Moreover, even the fact that the plaintiffs had traveled to these areas previously was not enough, because "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects." *Id*. (*quoting Lyons*, 461 U.S. at 102).

Since *Lujan*, the Supreme Court has repeatedly made clear that a plaintiff seeking an injunction to prevent future injury must describe "concrete plans," and not merely a "vague desire," to engage in conduct that may expose him to injury. *Summers*, 555 U.S. at 496 (*quoting Lujan*)

8

(plaintiff could not establish standing merely by alleging that she "want[s] to" return to the forest); *Carney v. Adams*, 141 S. Ct. 493, 502 (2020) ("[A] bare statement of intent alone" is insufficient).

Applying this well-established principle, courts in the Fourth Circuit have repeatedly dismissed claims for injunctive relief where, as here, the plaintiff does not plan (even in vague terms) to buy the product at issue again. *See Metague v. Woodbolt Distribution, LLC*, No. 8:20-CV-02186-PX, 2021 WL 2457153, at *8 (D. Md. June 16, 2021); *Palmer v. CVS Health*, No. CV CCB 17-938, 2019 WL 6529163, at *4 (D. Md. Dec. 4, 2019); *see also Hassan v. Lenovo*, No. 5:18-CV-105-BO, 2019 WL 123002, at *6 (E.D.N.C. Jan. 7, 2019) (plaintiff did not have standing to seek injunctive relief in a products liability action because "he does not allege that he intends to buy another Phab 2.").[10]

In the Amended Complaint, Plaintiff alleges for the first time that "if Defendant removed synthetic ingredients, or the Products were no longer deceptively labeled, Plaintiff would purchase the Products again in the future." The first part of this "either/or" statement—i.e., that Plaintiff would buy the Gummies again if they were an entirely different product—says nothing as to whether Plaintiff is at risk of buying the Gummies again based on the misunderstanding that they are all natural. The second option (i.e., the removal of the allegedly deceptive "natural" statement),

---

[10] Courts across the country have similarly held that boilerplate allegations about plaintiffs' intent to engage in activity that might make them vulnerable to alleged injury are insufficient to show that such injury is imminent and "certainly impending." *See, e.g.*, *Lanovaz v. Twinings N. Am., Inc.*, 726 F. App'x. 590, 591 (9th Cir. 2018) (no standing despite plaintiff's allegation that she would "consider buying" product in the future); *Schaller v. U.S. Soc. Sec. Admin.*, 844 Fed. Appx. 566, 571–72 (3d Cir. 2021) (plaintiff lacked standing to challenge SSA policy based on claim that it would injure her in the case of future travel where her "alleged trip and alleged permanent move are hypotheticals that may never materialize."); *Beiersdorfer v. Larose*, No. 20-3557, 2021 WL 3702211, at *7 (6th Cir. Aug. 20, 2021) ("generalized statements of future intent do not suffice to ground standing."); *Loving v. U.S.*, 125 F.3d 862 (10th Cir. 1997) ("Although plaintiff 'makes clear his intent to pursue the information made illegal by the [Act],' and states that he 'has used or will use the information which will be subject to the restraints imposed by the [Act],' he fails to allege with any specificity or particularity any conduct he may undertake which would subject him to a credible threat of prosecution."); *Elend v. Basham*, 471 F.3d 1199, 1208 (11th Cir. 2006) ("Plaintiffs' avowed intention to protest in a similar manner in the future is akin to the plaintiff in *Lujan* who declared, 'I intend to go back to Sri Lanka,' but confessed that she had no current plans").

undermines Plaintiff's entire injury claim by suggesting that Plaintiff would have still bought the Gummies if the same exact Gummies were sold without the "Thank God It's Natural" brand-name.

Neither of these allegations plausibly alleges a risk that Plaintiff will be injured in the future by the Gummies as they exist today. And for good reason: Plaintiff now knows that the Gummies contain such ingredients (and, more importantly, knows how to check the ingredient list for such ingredients), there is no possibility that she will be deceived by the TGIN brand name in the future. Requiring TGIN to remove the word "natural" from the Product's label "would do nothing to stave off future injury." *See Metague*, 2021 WL 2457153, at *8. Thus, Plaintiff's claim for injunctive relief must be dismissed for lack of standing.

### B. Plaintiff Fails to State a Claim

In order "to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see* Fed. R. Civ. P. 12(b)(6). To meet the plausibility standard, a complaint must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A plaintiff must allege "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* After stripping away any "conclusory statements" in the complaint, the remaining factual allegations must do more than "creat[e] a suspicion of a legally cognizable right of action." *Twombly*, 550 U.S. at 555 (internal quotation marks and brackets omitted). Rather, the allegations must "raise a right to relief above the speculative level." *Id.*

Additionally, where—as here—claims sound in fraud, a plaintiff must also satisfy Rule 9(b)'s heightened pleading standard by "stat[ing] with particularity the circumstances constituting

fraud." Fed. R. Civ. P. 9(b)[11]; *Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 781 (4th Cir.

2013) (dismissing MCPA claims because plaintiff's "vague generalizations" about defendant's

alleged false statements were not sufficiently particular to comply with Rule 9(b)). "These facts

are often 'referred to as the 'who, what, when, where, and how' of the alleged fraud.'" *Nemphos*

*ex rel. C.G.N. v. Nestle USA, Inc.*, No. GLR-12-2718, 2013 WL 4501308, at *8 (D. Md. Aug. 21,

2013) (citations omitted). Conclusory allegations that a defendant's conduct was fraudulent and

deceptive are not sufficient to satisfy Rule 9(b). *Galante v. Ocwen Loan Servicing LLC*, No.

CIV.A. ELH-13-1939, 2014 WL 3616354, at *24-25 (D. Md. July 18, 2014) (dismissing common

law fraud and MCPA claims under Rule 9(b)).

### 1.    Plaintiff Fails to State a Claim Under the MCPA

To state a claim under the MCPA, Plaintiff must allege that TGIN's conduct was: "(1) an

unfair or deceptive practice or misrepresentation that [was] (2) relied upon, and (3) cause[d] [her]

actual injury." *Agomuoh v. PNC Fin. Servs. Grp.*, No. GJH-16-1939, 2017 WL 657428, at *12 (D.

Md. Feb. 16, 2017) (dismissing claims under the MCPA); Md. Code. Ann. § 13–103, *et seq*. Here,

Plaintiff fails to allege sufficient facts to support at least two prongs of this standard, each of which

provides an independent basis for dismissal.

#### a)    Reasonable Consumers Would Not Share Plaintiff's Implausible Interpretation of the "Thank God It's Natural®" Brand Name

To allege a deceptive representation under the MCPA, Plaintiff must allege facts to suggest

that TGIN made a statement that would deceive a reasonable consumer, acting reasonably under

the circumstances. *Luskin's Inc. v. Consumer Protection Div.*, 353 Md. 335, 356-57 (Ct. App.

---

[11] Like Plaintiff's MCPA and multi-state consumer protection claims, Plaintiff's unjust enrichment claim sounds in fraud, thus it, too, is subject to Rule 9(b). *See Bakery & Confectionary Union & Indus. Int'l Pension Fund v. Just Born II, Inc.*, 888 F.3d 696, 705 (4th Cir. 2018) (holding that claim for unjust enrichment was subject to Rule 9(b) when it sounded in fraud)*; Walker v. Bank of Am. Corp.*, No. 8:18-CV-02466-PWG, 2019 WL 3766824, at *8 (D. Md. Aug. 8, 2019) ("A claim "sounds in fraud," and therefore implicates Rule 9(b), when it "is premised upon a course of fraudulent conduct").

1999). This test applies the same "reasonable consumer" principles and rules that are applied by the FTC, which examines the "overall net impression" of the given representation. *See id; Tavernaro v. Pioneer Credit Recovery, Inc.*, 43 F.4th 1062, 1069 (10th Cir. 2022) (citations omitted); *see also Aronberg v. Fed. Trade Comm'n*, 132 F.2d 165, 167 (7th Cir. 1942). Moreover, whether a statement is misleading or deceptive "is evaluated from the perspective of the reasonable *prospective purchaser*" and "as they would be read by those to whom they appeal." *F.T.C. v. Washington Data Res.*, 856 F. Supp. 2d 1247, 1272 (M.D. Fla. 2012) (emphasis added). Thus, "the target audience of the ad [is] of critical importance." *Luskin's*, 353 Md. at 356. The mere possibility that a defendant's label on its products might conceivably be misunderstood by an insignificant or unrepresentative class of consumers viewing it in an unreasonable manner is insufficient to state a claim. *See id.* at 350 (quoting *Heinz W. Kirchner t/a Universe Co.*, 63 F.T.C. 1282 (1963)). It is not enough for a plaintiff to assert, based on his or her own subjective belief, that a statement on the defendant's label is deceptive. *Hughes v. Ester C Co.*, 330 F. Supp. 3d 862, 871 (E.D.N.Y. 2018); *Lokey v. CVS Pharmacy, Inc.*, 20-CV-04782-LB, 2020 WL 6822890, *5 (N.D. Cal. Nov. 20, 2020).

Whether an allegedly deceptive practice likely would have misled a reasonable consumer is an issue that may be determined as a matter of law at the motion to dismiss stage. *Ramsay v. Sawyer Prop. Mgmt. of Md., LLC*, No. 1673 Sept. Term 2015, 2016 WL 6583892 at *16 (Md. Ct. Spec. App. Nov. 4, 2016). For that reason, courts dismiss MCPA claims where, as here, the theory of deception "[depends] on an objectively unreasonable interpretation of [a] statement." *Id.*; *see also Wallace v. Ocean Loan Service, LLC.*, No. PJM 16-2750, 2016 WL 6476287, *3 (D. Md. Nov. 2, 2016) (dismissing claims that were "not only implausible but belied by the documents [purportedly containing the claimed misrepresentations] themselves"); *Margolis v. Sandy Spring*

12

*Bank*, 221 Md. App. 703, 722 (2015); *Bezmenova v. Ocwen Fin. Corp.*, No. 8:13-CV-00003-AW, 2013 WL 3863948, at *5 (D. Md. July 23, 2013).

> 1)   *The Context of the Word "Natural"—Which Solely Appears within the TGIN Brand Name—Is Not Misleading to the Reasonable Consumer.*

When evaluating whether a plaintiff plausibly states a claim under the MCPA, context is crucial. TGIN's use of the word "natural" within its brand name, when considered within the context of the Product's label as a whole, would not mislead a reasonable consumer. Under the MCPA, "a statement cannot be viewed in a vacuum; rather it must be viewed in the context in which it was made, along with other representations to the consumer." *Ramsay,* 2016 WL 6583892 at *16 (citations and quotations omitted); *see also McGraw v. Loyola Ford, Inc.*, 723 A.2d 502, 512 (Md. Ct. App. 1999) ("[A] statement cannot simply be removed from the context of the representation as a whole."). Here, the word "natural" appears in the brand name, within the logo of a haircare brand that celebrates and supports its users' natural, curly, and textured hair. Furthermore, it is written in small print and followed immediately by a trademark registration symbol and an asterisk, which directs readers to another side of the label where an ingredient list is prominently placed. In this context, no reasonable consumer would misinterpret the word "natural" to amount to an affirmative representation about the Product's ingredients.

Courts across the country have consistently rejected theories similar to (but, by comparison, much stronger than) those here, finding that the use of the word "natural" within a brand name is not an affirmative representation as to the specific product's ingredients, and would not mislead a reasonable consumer.[12]

---

[12] Under the express terms of the MCPA, the Court may, and should, look to the decisions of other federal courts applying the reasonable consumer test, which was articulated by the Federal Trade Commission and adopted by Maryland courts. *See* Code, Commercial Law § 13–105 ("It is the intent of the General Assembly that in construing the term 'unfair or deceptive trade practices,' due consideration and weight be given to the interpretations of § 5(a)(1)

For example, in *Axon v. Florida's Natural Growers, Inc.*, the Second Circuit upheld the dismissal of a putative class action that asserted claims under New York's consumer protection statute against the manufacturer of an orange juice product sold under the brand name, "Florida's Natural."[13] *Axon v. Florida's Natural Growers, Inc., et al.*, 813 F. App'x 701 (2d Cir. 2020). There, the plaintiff alleged that the use of the word "natural" in the brand name was deceptive because the orange juice contained trace amounts of an herbicide that is not a natural ingredient. The district court dismissed the complaint, holding that it was implausible a reasonable consumer would be misled by the brand name "Florida's Natural" because "most importantly, the term "natural" is part of defendant's brand name, not part of a label such as 'all natural or '100% natural.'" *See Axon v. Citrus World, Inc., et al.*, No. 8-cv-4162 (ARR) (RML) 2019 WL 8223527 (E.D.N.Y. Jan. 14, 2019), *aff'd Axon*, 813 F. App'x at 705. The Second Circuit found that the district court properly determined that no reasonable consumer would be misled by the "Florida's Natural" label where "the term 'natural' occurred **only** within the brand name 'Florida's Natural' and nowhere else on the packaging" and "[t]he packaging does not describe the orange juice as 'natural' on a stand-alone label or as '100% natural.'" *Axon*, 813 F. App'x at 705 (emphasis added).

Similarly, in *Mustakis v. Chattern, Inc.*, the Eastern District of New York held that no reasonable consumer could be misled by anti-dandruff shampoo sold under the brand "Selsun Blue Naturals." *Mustakis v. Chattern*, No. 20-cv-5895, 2022 WL 714095, *3 (E.D.N.Y. Mar. 9, 2022). Evaluating the product label as a whole, the court held it was implausible that a reasonable consumer would be misled into believing that the product did not contain synthetic ingredients, in

---

of the [FTC] Act by the [FTC] and the federal courts."). "The legislature's reference to FTC and federal court interpretations of the federal act contemplates a growing and developing body of law." *Luskin*, 353 Md. at 354.

[13] Like the MCPA, New York's consumer protection statute, General Business Law 349, applies an objective definition of deceptive acts and practices limited to mislead "a reasonable consumer acting reasonably under the circumstances," which "complements the definition adopted by the Federal Trade Commission." *See Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26 (N.Y. Ct. App. 1995).

part because the label did not claim that the product was "all natural" or "100% natural." *Id.* Instead, "the term 'Naturals' appears only in the brand name," and such use was not descriptive. *Id.*

*Lisowski v. Henry Thayer Company, Inc.* is also instructive. *See Lisowski v. Henry Thayer Co.,* 501 F. Supp. 3d 316 (W.D.P.A. 2020). There, the plaintiff brought claims under Pennsylvania's consumer protection statute against the manufacturer of a variety of personal care products sold under brand name, "THAYERS® Natural Remedies," such as "Witch Hazel Aloe Vera" facial mist. Plaintiff alleged that the defendant made deceptive and misleading claims that its facial mist was "natural" because the term was used in the brand name, within the label's logo. In *Lisowski* (unlike here), the term "natural" also appeared many times across the product's label, including in the phrases "naturally occurring" (twice), "naturally sourced," and "natural glow." The court nonetheless dismissed plaintiff's claims, holding that his proposed interpretation of the "natural" claims ignored "**the context in which the label presents them**." *Id.* at 334 (emphasis added). The court further held that the use of the word "natural" in the trademarked brand name was "not an affirmation of what the product contains or how it will perform." *Id.* at 333 n.5. Because no reasonable consumer reading the "natural" phrases in context would be deceived into believing that the product is 100% natural or that all the ingredients in the product are natural, the court dismissed the plaintiff's claims. *Id.* at 334-335.

Here, numerous factors support a finding that reasonable consumers would not share Plaintiff's proposed interpretation of the TGIN brand name and logo.

**The packaging and logo as a whole:** The word "natural" appears only once within the full name of the brand, printed in *fine print* immediately underneath the letters "TGIN," which is written in much larger font. (Am. Compl. ¶ 43.) Based on how the text appears on the Product,

reasonable consumers would not pluck the term from the brand's logo and read it in a vacuum. *See Eshelby v. L'Oréal USA*, No. 22-cv-1396, 2023 WL 2647958 (S.D.N.Y. Mar. 27, 2023) (reasonable consumers would not interpret the word "Paris" within the stylized "L'Oréal Paris" logo to mean the product was made in Paris); *Sarr v. BEF Foods, Inc.,* No. 18-cv-6409, 2020 WL 729883 at *5 (E.D.N.Y. Feb. 13, 2020) (reasonable consumers would not interpret brand's slogan "farm-fresh goodness," which was written on the product's logo underneath the product's brand name, as a representation that the particular product arrived "fresh from the farm").

**The registered trademark symbol next to the word "natural":** That the word "natural" is followed immediately by the symbol for a registered trademark is another important factor. The trademark symbol indicates that the term is not "an affirmation of what the product is or how it will perform." *See Lisowski* at 501 F. Supp. 3d at 333 n.5 (holding under the facts in that case that "a trademark cannot be the basis of a misrepresentation claim as it is not a representation about the contents of the product"); s*ee also McKinnis v. Kellogg USA,* , 2007 WL 4766060, at *4 (C.D. Cal. Sept. 19, 2007) ("No reasonable consumer would view the trademark "FROOT LOOPS" name as describing the ingredients of the cereal."); *Muller v. Blue Diamond Growers*, No. 4:22 CV 707 RWS, 2023 WL 4579241, at *7–8 (E.D. Mo. July 18, 2023) (plaintiff failed to plausibly allege that a reasonable consumer would be deceived by the Smokehouse® trade name (in Blue Diamon's Smokehouse Almonds) into believing that the almonds were smoked in a smokehouse, where the packaging did not describe the product as smoked and the term smokehouse was qualified by a registered trademark symbol).

**The asterisk directing readers to another part of the label:** The presence of an asterisk after the registered trademark symbol, which directs the reader of the label to the ingredient list, is yet another important factor because it would lead the reasonable consumer to turn the packaging

over to the side and read the rest of the label, where they would be confronted by the ingredient list. *See Richardson v. Edgewell Pers. Care, LLC*, No. 21-CV-08275 (PMH), 2023 WL 1109646, at *6 (S.D.N.Y. Jan. 30, 2023) (finding that an asterisk appended to a representation that a product was "Reef Friendly" would lead the reasonable consumer to search for a corresponding asterisk elsewhere on the label). Here, the asterisk is plainly visible, prompting the reasonable consumer to turn the product over. *See id.* (holding "it is unreasonable…to suggest that a consumer is not required to read a product's label to obtain information" where an asterisk signals to the consumer to look for the corresponding statement elsewhere on the label).

**The small font size of the word "natural":** The word "natural" appears only once on the Product's principal display in some of the smallest font, overshadowed by the eye-catching large print "TGIN" above it, and the hot pink "Wild Growth Vitamins" text below it. Indeed, the word "natural" is in such small text that Plaintiff needed to crop the label and zoom in on it in her Amended Complaint. (Am. Compl. at ¶ 6.) The reasonable consumer would strain to *see* the word "natural," let alone rely on it. *See id; Rivera v. Navient Sols., LLC*, No. 20-CV-1284 (LJL), 2020 WL 4895698, at *9 (S.D.N.Y. Aug. 19, 2020) (courts consider "font size, placement, or emphasis" when deciding if reasonable consumers would be deceived).

**The ingredient list:** The ingredient list on the bottle that Plaintiff allegedly purchased also prevents any misconception as to the ingredients in the Gummies. *See McGinity v. Procter & Gamble Co,* 69 F.4th 1093, 1099 (9th Cir. 2023) ("The ingredients list, which [plaintiff] alleges includes many ingredients that are synthetic and that a reasonable consumer would not think are natural, clarifies that the rest of the ingredients are artificial and that the products thus contain both natural and synthetic ingredients.") The ingredient list "is one piece of 'all the information available to consumers' and is therefore relevant to determining whether reasonable consumers

17

would be misled." *Matthews v. Polar Corp.*, No. 22-CV-649, 2023 WL 2599871, at *7 (N.D. Ill. Mar. 22, 2023).[14] This is particularly true where, as here, the term in question has multiple interpretations or definitions. *See Bynum v. Family Dollar Store*, 592 F. Supp. 3d 304, 311 (S.D.N.Y. 2022) (holding where a description on a product is susceptible to multiple interpretations, the label is ambiguous and "a reasonable consumer would read the ingredients list in order to clarify his or her understanding of the label"). In this case, the ingredient list ameliorates any ambiguity as to the term "natural" because it shows that the product contains Red 40 (in minimal amounts) as an artificial color, as well as citric acid, which may be either natural or synthetic. [15]

**The Gummies' context and purpose:** The context in which the word "natural" appears dispels Plaintiff's claim that it refers to the ingredients in the Product. As noted above, the term "natural" does not exist in isolation. Instead, it appears *only* in the TGIN brand name. TGIN is a haircare brand for natural hair, *i.e.,* hair that is untreated by chemical straighteners.[16] "TGIN" and "Thank God It's Natural®" are, thus, a celebration of TGIN's customers' natural curls and waves. Its target customers know this. Viewed in this context, no reasonable consumer—much less

---

[14] *See also Steinberg v. Icelandic Provisions, Inc.*, No. 22-15287, 2023 WL 3918257 (9th Cir. June 9, 2023) (holding that a yogurt's brand name ("Icelandic Provisions"), taken together with the statement "Traditional Icelandic Skyr" and the image of a snowy countryside would not deceive a consumer into believing the product is manufactured in Iceland because "the front label's 'ambiguity [is] resolved by reference to the back label.'"); *Kuenzig v. Kraft Foods, Inc.*, No. 8:11-CV-838-T-24 TGW, 2011 WL 4031141, at *8 (M.D. Fla. Sept. 12, 2011) (dismissing plaintiff's claim that the proximity of lunch meat packaging's "percent fat free" to the per-serving statement of calories misled consumers into believing only a certain percentage of the calories came from fat was "disingenuous at best," particularly where the nutritional label included a calculation of "calories from fat"; *Hairston v. S. Beach Bev. Co.*, No. 12-CV-1429-JFW, 2012 WL 1893818, at *5 (C.D. Cal. May 18, 2012) (finding that no reasonable consumer would interpret the phrase "all natural with vitamins" as meaning "all natural vitamins" and further holding that "to the extent there is any ambiguity, it is clarified by the detailed information contained in the ingredient list, which explains the exact contents of [the product]."); *Howard v. Bayer Corp.*, No. 4:10-cv-1662-DPM, 2011 WL 13224118, at *1 (E.D. Ark. July 22, 2011) ("A reasonable consumer of any medicine or medicine medicine-like substance such as vitamins would not stop with the brand name.").

[15] To the extent that Plaintiff claims that consumers cannot determine whether the Product contains synthetic or artificial ingredients by reading the ingredient label, this argument is circular.

[16] Natural Hair, Cambridge Advanced Learner's Dictionary & Thesaurus (Cambridge University Press), *available at* https://dictionary.cambridge.org/us/dictionary/english/natural-hair.

someone in TGIN's target audience who is actually shopping for the Gummies—would believe that the word "natural" in the TGIN brand name means the product contains only natural ingredients. *See Luskin's,* 353 Md. at 356 ("In the case of alleged deceptive advertising, the product or service advertised and the target audience of the ad are of critical importance."); *F.T.C. v. Washington Data Res.*, 856 F. Supp. 2d at 1272 (holding that the court considers the perspective of the "reasonable *prospective purchaser*" and looks at how the Product would be viewed "by those to whom [the Product] appeal[s]"); *Ibarrola v. Kind, LLC*, 83 F. Supp. 3d 751, 757 (N.D. Ill. 2015) ("A reasonable consumer comes to the market with a degree of background knowledge.").[17]

By contrast, Plaintiff's "strained reading" of the label "is inconsistent with the Product's labeling and with common sense." *Warren v. Coca-Cola Co.*, No. 22-cv-6907 (CS), 2023 WL 3055196, *4 (S.D.N.Y. Apr. 21, 2023) (dismissing consumer fraud claims related to "Margarita Hard Selzer" because "context is crucial" and a reasonable consumer of hard seltzer would recognize that the term "Margarita" does not refer to a distilled spirit); *see also Becerra v. Dr. Pepper/Seven Up, Inc.*, 945 F.3d 1225 (9th Cir. 2019) (reasonable consumers understand that in the context of soda, the term "diet" (as in "Diet Dr. Pepper") does not mean that the product promoted weight loss); *Prescott v. Rite Aid Corporation*, No.22-cv-05798-VC, 2023 WL 2753899 (N.D. Cal. Apr. 3, 2023) (dismissing plaintiff's claims that a Rite Aid product called, "Maximum Strength Pain Relief Lidocaine Patches" was misleading because "in the context of the transaction here—buying a pain-relief patch at a drug store—a reasonable consumer would not understand the phrase "maximum strength" to mean the highest dose that money can buy.").

---

[17] *See also* Restatement (Third) of Unfair Competition (1995) § 3, cmt. b ("The materiality of a representation, like its meaning, must be determined from the perspective of the audience to whom it is directed.... If a *1273 significant number of prospective purchasers are likely to attach importance to the representation in determining whether to engage in a proposed transaction, the representation is material.").

Plaintiff divorces the word "natural" from its context and misrepresents its meaning. As such, her claims must fail. *See Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013) ("A plaintiff who alleges that [she] was deceived by an advertisement may not … misleadingly excerpt the language of the advertisement in [her] pleadings and expect his action to survive a motion to dismiss or, indeed, to escape admonishment."); *Miller v. Sanofi Consumer Healthcare*, No. 22 CIV. 574 (LLS), 2023 WL 112553, at *2 (S.D.N.Y. Jan. 5, 2023) ("The label uses the word "naturally" as an adverb to describe how the Products work. Plaintiff misrepresents it, saying that it describes the product. On that key point, the claim fails."); *Hemy v. Perdue Farms*, Inc., No. 11-CV-888, 2011 WL 6002463, at *15 (D.N.J. Nov. 30, 2011) (dismissing claims that the term "humanely raised" on a package of chicken products was misleading where plaintiff failed to incorporate allegations explaining why the reasonable consumer's understanding of the term "raised" would differ from the commonly understood definition of the term in the context in which it was used); *Cheslow v. Ghirardelli Chocolate Co.*, 445 F. Supp. 3d 8, 17 (N.D. Cal. 2020) (holding that "it would not be appropriate to base liability off a misunderstanding" of a challenged word on a product's label).

**The Gummies' whimsical nature:** Finally, this case involves pink, teddy bear-shaped gummy vitamins. The playful, bright nature of the product undermines Plaintiff's interpretation that it is made of only natural ingredients. *See, e.g., Chiappetta v. Kellogg Sales Co.*, No. 21-CV-3545, 2022 WL 602505, at *4 (N.D. Ill. Mar. 1, 2022) (dismissing plaintiff's claim under Illinois law that the word "Strawberry" combined with a picture of half a strawberry and a Pop-Tart oozing red filling misleads consumers into believing that a Pop Tart's filling consists only of strawberries); *Sugawara v. Pepsico, Inc.*, No. 08-cv-01335-MCE-JFM, 2009 WL 1439115, *3 (E.D. Cal. May 21, 2009) (dismissing claims against manufacturer of Cap'N'Crunch cereal where

no reasonable consumer could believe that "Crunchberries" were actual berries based on the packaging of the product); *Gouwens v. Target Corp.*, No. 3:22-CV-50016, 2022 WL 18027524, *3 (N.D. Ill. Dec. 30, 2022) (dismissing claims against beverage manufacturer because "[a] reasonable consumer would not believe that a shelf-stable, bright red fruit punch flavored liquid water enhancer was free of artificial ingredients absent an affirmative statement to the contrary"). Reasonable consumers would be much more likely to believe the orange juice at issue in *Axon* or the witch hazel facial mist in *Lisowski* contain natural ingredients.—but even in those cases, the courts dismissed the plaintiffs' claims.

> 2) *"Natural" Does Not Have a One-Size-Fits-All Meaning, As Plaintiff Claims*

Plaintiff asks the Court to ignore the crucial context above, and assume that the word "natural" necessarily refers to product ingredients. This argument has been consistently rejected in the courts above, and for good reason. The Dictionary shows that "natural" has at least 15 different meanings—from the color "natural", *e.g.*, "off-white" or "beige", to "possessing or exhibiting the higher qualities (such as kindliness and affection) of human nature" to "having a form or appearance found in nature," *e.g.* "natural hair."[18] It is thus impossible to assign a single meaning to the term, regardless of context—especially where, as here, the context points to another accepted meaning of the word "natural" (*i.e.*, natural hair).

Although Plaintiff purports to base her proposed definition on FTC guidance, such guidance explains that "[the word] natural may be used in numerous contexts and may convey different meanings depending on the context." *See* 75 Fed. Reg. 63552, 63586 (Oct. 15, 2010) ("The Commission…does not propose addressing natural claims" because "the Commission does

---

[18]    Natural, MERRIAM WEBSTER DICTIONARY (11TH ED.), available at https://www.merriam-webster.com/dictionary/natural.

not have a basis to provide general guidance on the use of the term.") (quoted out-of-context in Am. Compl. at ¶ 36).[19] Moreover, the FTC and the FDA's refusal to define "natural" undermines Plaintiff's theory that the word has a single definition, regardless of context.[20] *See also Lemke v. Kraft Heinz Food Co.*, No. 21-CV-278-WMC, 2022 WL 1442922, at *5 (W.D. Wis. May 6, 2022) (finding plaintiff's definition of the term "tomato sauce" was implausible in light of FDA's refusal to define a "standard of identity…for tomato sauce").[21]

3)   *Even if "Natural" Applied to the Gummies' Ingredients, Plaintiff Fails to Plausibly Allege that "Natural" Means "Free of Synthetic Ingredients"*

Even if Plaintiff could plausibly allege that "natural" refers to the Gummies' ingredients (which she cannot), she still has done nothing to assert that reasonable consumers share in her subjective belief that the standalone use of the term "natural" means the Product "contains *only* natural ingredients" or "free of any synthetic ingredients." The Gummies' packaging is devoid of any representation that it contains *only* natural ingredients, thus Plaintiff must allege sufficient support for this inferential leap. Plaintiff fails to do so here.

Courts routinely reject plaintiffs' attempts to distort claims that a product *contains* certain ingredients into claims that a product *does not contain* any other ingredients. The Ninth Circuit's recent decision in *McGinity v. Procter & Gamble Co.*, is persuasive on this point. There, the Court affirmed the dismissal of a lawsuit alleging that the labeling of Pantene Pro-V "Nature Fusion"

---

[19] Plaintiff also points to FTC settlements with manufacturers over their "natural claims." (Am. Compl. at ¶ 38.) Not only do these cases not involve gummy vitamins, but they also involved products marketed as "all natural" or "100% natural."

[20] In Plaintiff cites a FDA fact sheet that states, "the FDA has not defined the term "natural." (*Id.* at ¶ 37, n.7.)

[21] Plaintiff also cites the USDA's "Draft Guidance Decision Tree for Classification of Materials Synthetic or Non synthetic (Natural)," (Am. Compl. at ¶ 35), but this source is not relevant. This document was created for the National Organic Program ("NOP"), which regulates *agricultural products* that are *organic.* Because the Gummies are not agricultural products, such as poultry, beef, or corn, and are not labeled as "organic," the definition of synthetic or natural provided by the USDA does not apply. *See, e.g., Pelayo v. Nestle U.S.A.*, 989 F. Supp. 2d 973, 979 (C.D. Cal. 2013) (rejecting plaintiff's citation to the NOP's definitions of synthetic and natural because the product in question, a shelf-stable pasta, was not labeled as organic). For similar reasons, Plaintiff's citation to a consumer survey about processed foods (Am. Compl. at ¶ 39.) also does not apply.

shampoo, which includes an image of an avocado next to a green leaf, falsely implied that the shampoo had zero synthetic ingredients. *McGinity,* 69 F.4th at 1098. In so doing, the court explained that "[u]nlike a label declaring that a product is '100% natural' or 'all natural,' the [front] label does not promise that the product is wholly natural. Although the front label represents that something about the product bears a relationship to nature, the front label does not make any affirmative promise about what proportion of the ingredients are natural." *Id.* The court also noted that the product's ingredient list on the back of the packaging "clarifies that the rest of the ingredients are artificial and that the products thus contain both natural and synthetic ingredients." *Id.* at 1099. Thus, considering the context of the entire packaging and "[w]ith the entire product in hand," the court concluded that "no reasonable consumer would think that the products are either completely or substantially natural." *Id.*

Other courts agree. *See Axon*, 813 F. App'x at 705 705; *Mustakis,* 2022 WL 714095, *3; *Gasser v. Kiss My Face, LLC,* No. 17-CV-01675-JSC, 2018 WL 4847071, at *4 (N.D. Cal. Apr. 4, 2018) (holding that "nourish naturally" representation "is not the same as 'contains only naturally derived ingredients'").[22]

Here, the Product's label does not include any representations that it contains "exclusively," "only," "100%" or "all" natural ingredients. Nor does the label affirmatively state

---

[22] *See also Guzman v. Walmart Inc.*, No. 22-CV-3465, 2023 WL 3455319, at *3 (N.D. Ill. May 15, 2023) (dismissing claims against mayonnaise company that advertised "Mayo with Olive Oil" where the product said nothing about the amount of olive oil in the jar); *Weaver v. Champion Petfoods USA Inc.*, 3 F.4th 927, 937 (7th Cir. 2021) (finding statement that a bag of dog food contains "fresh regional ingredients" does not imply that it is composed *exclusively* of ingredients that are fresh and regional); *Kennedy v. Mondelez Glob. LLC*, No. 19-cv-302, 2020 WL 4006197, at *4 (E.D.N.Y. July 10, 2020) (noting that graham crackers that were advertised as "made with real honey" were not misleading even though other sweeteners and additives were also used); *Sarr,* 2020 WL 729883 at *4 (determining that a label that states that mashed potatoes are made with "real butter" does not imply that other fats are also not used); *Henderson v. Gruma Corp.*, No. 10-cv-04173, 2011 WL 1362188, at *12 (C.D. Cal. Apr. 11, 2011) (determining that crackers labeled as made "with Garden Vegetables" was not misleading as a matter of law because "the labeling statement does not claim a specific amount of vegetables in the product, but rather speaks to their presence in the product").

that it is free of synthetic or artificial ingredients. Indeed, the only reference to ingredients on the principal display of the Product is the statement, "with Biotin + Vitamin C," and Plaintiff does not allege that the word "with" implies that the Product includes only Biotin and Vitamin C. In this context, the sole use of the word "natural" in the brand name would not be misleading to a reasonable consumer.[23]

What's more, Plaintiff appears to concede that the vast majority of ingredients in the Product are, in fact, "natural." Although Plaintiff alleges that the product contains synthetic ingredients in the form of citric acid and Red 40, Plaintiff fails to adequately plead that the minimal presence of these ingredients make a product not "natural."[24] Plaintiff would be hard-pressed to argue that, even if the word "natural" in the Product's brand name refers to ingredients, it would be deceptive to reference the word when all but the most minor ingredients may actually be natural.

Furthermore, to the extent that Plaintiff argues the "front" label of the Product is misleading because it omits any reference to the presence of artificial or synthetic ingredients, this theory fails under Maryland law. *See Shepard v. Burson*, 50 A.3d 567, 576 (Md. Ct. App. 2012) (dismissing MCPA claim where plaintiff alleged that defendants' mailing was misleading and deceptive because it omitted certain information, holding the representations on the mailing were simply "incomplete" rather than false). Absent an affirmative representation that the Product is free from

---

[23] Plaintiff's Amended Complaint includes two (2) alleged "reviews" to support her allegation that other customers have been similarly deceived by TGIN's use of the word natural in its brand name. The purported reviews are undated, unsigned, and their source is not cited. There is no indication that they were written by actual consumers, as opposed to someone else for the purpose of this litigation. Even if they did represent the views of actual consumers, two random, anecdotal examples of purported disgruntled customers posting their views in an unknown forum does not give rise to an inference that reasonable consumers believe the use of the term "natural" on the Product's label to mean "free of synthetic or artificial ingredients." *See Morales v. Kimberly-Clark Corp.*, No. 18-CV-7401 (NSR), 2020 WL 2766050, at *6 (S.D.N.Y. May 27, 2020) ("That consumers have raised complaints in online forums does not, alone, give rise to an inference that Defendant failed to disclose material information."); *Ruiz v. Owlet Baby Care, Inc.*, No. 2:19-CV-00252, 2021 WL 3370259, at *4 (D. Utah Aug. 3, 2021) (rejecting as immaterial plaintiffs' reference in their complaint to a number of online customer reviews).

[24] In accordance with federal regulations, citric acid and Red 40 are listed in order of their predominance in the Product. 21 C.F.R. 101.4(a). Citric acid is the fifth-listed ingredient and Red 40 is listed last.

artificial ingredients, the omission of references to artificial ingredients on the "front" of the label would not mislead a reasonable consumer into believing the Product is completely natural and free from synthetic and artificial ingredients. *See, e.g. Boss v. Kraft Heinz Co.,* No. 21-CV-06380, 2023 WL 5804234, at *2 (N.D. Ill. Sept. 7, 2023) (finding reasonable consumer would not be misled by statement that product contained "Natural Flavor with Other Natural Flavors" into believing the product was free of artificial flavors); *McGinity*, 69 F.4th at 1098 (holding that when "a front a label is ambiguous, the ambiguity can be resolved by reference to the back label").

Thus, at best, Plaintiff's claim is merely that the label is vague because some customers *might, theoretically* interpret "natural" to reference ingredients rather than the users' hair, and *possibly* would assume that 100% of the product is natural. Even accepting Plaintiff's strained theories, alleging *vagueness* or ambiguity is not sufficient to meet Plaintiff's burden to plausibly allege deceptiveness where the side of the label includes an ingredient list that would prevent any reasonable consumer from sharing Plaintiff's proposed definition. *See McGinity*, 69 F.4th at 1098 (holding "the front label must be unambiguously deceptive for a defendant to be precluded from insisting that the back label be considered together with the front label").

<em>b)      Plaintiff Fails to Adequately Allege A Cognizable Injury</em>

Plaintiff's MCPA claim also fails under Rule 9(b) because Plaintiff does not allege any facts to suggest that the reference to "natural" in the TGIN brand name caused her an economic injury, as required to bring an MCPA claim.

To show a cognizable injury under the MCPA, the injury must be "objectively identifiable" and "measured by the amount the consumer spent or lost as a result of his or her reliance on the sellers' misrepresentation." *Lloyd v. Gen. Motors Corp.*, 397 Md. 108, 916 (2007); *Citaramanis v. Hallowell*, 328 Md. 142, 613 (Md. 1992). A complaint adequately pleads loss, for instance, when

it points to some amount that it would "take to remedy the loss [the plaintiff] incurred as a result of the respondents' alleged deceptive trade practices." *Chambers v. King Buick GMC, LLC*, 43 F. Supp. 3d 575, 621–22 (D. Md. 2014); *Jones v. Koons Automotive, Inc.*, 752 F. Supp. 2d 670, 684 (D. Md. 2010).

*Chambers* and *Jones* are directly on point. In *Chambers*, the plaintiff asserted that she paid significantly more for a vehicle than it was worth and was thus overcharged. Similarly, in *Jones,* the plaintiff alleged that she would not have paid as much for a car had she known that it was previously used as a short-term rental. In dismissing the plaintiffs' MCPA claims in both cases, the court held that "[a] hypothetical price concession is simply not the type of tangible injury appropriately recognized in a private MCPA action, as virtually any misrepresentation could support such a claim of 'injury.'" *See Chambers,* 43 F. Supp. 3d at 621–22; *Jones*, 752 F. Supp. 2d at 684. Instead, a plaintiff must allege "the cost of the remedy or other actual harm" in order to state a claim. *See Chambers*, 43 F. Supp. 3d at 622.

Here, Plaintiff's alleged injuries all depend on her reflexive assumption that reasonable consumers "value natural products for important reasons" and "natural" products "are worth more than products that contain artificial ingredients." (*See* Am. Compl. at ¶¶ 29, 30.) Plaintiff does not allege any facts to support this allegation. For example, Plaintiff claims in conclusory fashion that she "paid a premium price for the Products over and above comparable products that did not purport to be 'natural.'" (*Id*. at ¶ 60.b.) However, she provides no facts showing how the price she paid compares to similar gummies containing non-synthetic ingredients. Nor does she allege any facts to suggest that the mere presence of two minor ingredients render her product less valuable than expected. In fact, Plaintiff does not even allege that the Product is actually worth less than the

26

price she ultimately paid. Finally, Plaintiff does not allege that products that are slightly less than "100% natural" are less valuable than products containing no synthetic or artificial ingredients.

Without such factual support, Plaintiff cannot articulate an "objectively identifiable loss" with the particularity required under Rule 9(b), and her MCPA claim fails. *See Kelly v. Novastar Mortg., Inc*., No. CV AW-06-2616, 2006 WL 8457108, at *2 (D. Md. Dec. 29, 2006) ("The Court should not accept allegations that are not well-pleaded and may dismiss a Complaint if the allegations are…baldly conclusory.") (citations omitted).

### 2.    Plaintiff Fails to State a Claim for Unjust Enrichment

In Count II, Plaintiff purports to bring a standalone claim for unjust enrichment under Illinois law on behalf of the members of the "proposed Classes," which includes purchasers in at least 11 other states. As a preliminary matter, Plaintiff's unjust enrichment claim cannot be applied to the putative class. *See Harris v. Rust-Oleam,* 21-CV-01376, 2022 WL 952743, *5 (N.D. Ill. Mar. 30, 2022) (striking nationwide class allegations for unjust enrichment claim).[25] Furthermore, Plaintiff's claim for unjust enrichment—which is based on the same claims of fraud as her first cause of action—fails for the reasons above (*supra* at Part III(B)(1)(a)). *Washington Cnty. Bd. of Educ.,* 431 F. Supp. 3d 698, 718 (D. Md. 2020) (dismissing plaintiff's unjust enrichment claim where MCPA claim failed as a matter of law); *State Farm Mut. Auto. Ins. Co. v. Carefree Land Chiropractic, LLC*, No. 18-CV-1279, 2018 WL 6514797, at *4 (D. Md. Dec. 11, 2018) (dismissing unjust enrichment "for the same reasons" as fraud claims failed).

Additionally, Plaintiff's claim for unjust enrichment must be dismissed because Plaintiff lacks standing to bring a common law cause of action for unjust enrichment under Illinois law. For

---

[25] *See also Thompson v. Bayer Corp.*, No. 4:07CV00017 JMM, 2009 WL 362982 (E.D. Ark. Feb. 12, 2009) (finding that states' different approaches to, or elements of, unjust enrichment are "signficant," and conducting review of the material differences; *Rapp v. Green Tree Services, LLC* 302 F.R.D. 505, 514 (D. Minn. 2014) (holding that material differences exist among different states' unjust enrichment laws).

a common law cause of action, federal courts sitting in Maryland must look to Maryland law to determine what law governs those claims. *Branhaven, LLC v. BeefTek, Inc.*, 965 F. Supp. 2d 650, 664 (D. Md. 2013). For state common law torts, Maryland applies the law of the state in which the injury occurred. *Lab. Corp. of Am. V. Hood*, 911 A.2d 841, 845 (Md. Ct. App. 2006). Where, as here, the alleged injuries are purely economic, rather than personal, courts deem them to have accrued where the injured party resides. *See* 21 M.L.E. Torts § 2 (West 2018) ("The place of injury means the place where the injury was suffered rather than the place where the wrongful act took place[.]"). Furthermore, "[w]hen a person sustains loss by fraud, the place of wrong is where the loss is sustained, not where fraudulent representations are made." Restatement (First) of Conflict of Laws § 377 n.4 (Am. Law Inst. 1934); see also *Lab. Corp. of Am.*, 911 A.2d at 845 (noting that Maryland courts follow the principles stated in the Restatement (First) of Conflict of Laws); *Simone v. VSL Pharm.*, TDC-15-1356, 2017 WL 66323, *2 (D.Md Jan. 5, 2017). Thus, whether or not "the deceptive labeling and marketing decisions made by Defendant" occurred in Illinois (Am. Compl. at ¶ 21) is not relevant.

Plaintiff alleges that she is a Maryland resident who purchased the Gummies in Maryland. Under Maryland's choice-of-law principles, Plaintiff's injury, for the purposes of her unjust enrichment claim, arose in Maryland, not Illinois. Thus, Plaintiff does not have standing to bring a claim for unjust enrichment under Illinois law.

### 3.    Plaintiff's Catch-All Claim Under Other States' Laws Also Fails

In her third cause of action, Plaintiff purports to bring a claim for "Violation of State Consumer Protection Statutes" under the laws of at least 11 states.

Plaintiff lacks standing to bring such claims. It is well accepted that a named plaintiff may only assert a state claim if she resides in, does business in, or has some connection to that state. *See Metague*, 2021 WL 2457153 (granting motion to dismiss where plaintiff could not demonstrate

28

that his injury "satisfies the statutory requirements of the laws of the States which [he is] invoking"); *see also Knapp v. Zoetis, Inc.*, No. 20-cv-191, 2021 WL 1225970, at \*9 (E.D. Va. March 31, 2021) ("District courts within the Fourth Circuit have consistently held that plaintiffs do not have standing to bring claims under the statutes or laws of a state where they: (1) do not reside; and (2) have not been harmed.").[26] It is also axiomatic that a plaintiff cannot use Rule 23 as a means of asserting claims that she could not pursue in her own right. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 612-13 (1997); Fed. R. Civ. P. 82. Standing cannot be acquired through the back door of a class action. *Allee v. Medrano*, 416 U.S. 802, 829 (1974). As a resident of Maryland, who claims to have made the purchase at issue in Maryland, Plaintiff lacks standing to invoke the laws of any other state.

Regardless, Plaintiff's boilerplate allegations fail to state a claim under any of these other statutes. Plaintiff meekly recites that "the Consumer Protection Acts of the States in the Multi-State Consumer Class prohibit the use of unfair or deceptive business practices in the conduct of trade or commerce," and that "as a result of the Defendant's use or employment of unfair or deceptive acts or business practices, Plaintiff, and other members of the Multi-State Consumer Class, have sustained damages in an amount to be proven at trial." (Am. Compl. at ¶¶ 96, 98.) She does not identify a single element of any of the statutes she seeks to invoke, much less explain

---

[26] *See also In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1074-75 (N.D. Cal. 2015) (granting motion to dismiss claims brought under the laws of thirty-five (35) states where no named plaintiff resided; "The number of consumers from 35 other states in which state law claims are asserted is vast relative to the claims to which the named Plaintiffs have standing."); *Baldwin v. Star Sci., Inc.*, 78 F. Supp. 3d 724, 734-35 (N.D. Ill. 2015) (finding that plaintiffs needed a named representative from each state to proceed on claims under each state's laws); *Xi Chen Lauren v. PNC Bank, N.A.*, 296 F.R.D. 389, 391 (W.D. Pa. 2014) (dismissing for lack of standing plaintiff's unjust enrichment claims that arose under the laws of states where plaintiff suffered no injury); *In re Ductile Iron Pipe Fittings ("DIPF") Indirect Purchaser Antitrust Litig.*, No. 12-169, 2013 WL 5503308, at \*11 (D.N.J. Oct. 2, 2013), *quoting In re Magnesium Oxide I*, No. 10-5943 (DRD), 2011 WL 5008090, at \*8 (E.D. PA. 2009)(other internal citations omitted)("[C]ourts find that they must initially 'review the standing of actual, not proposed plaintiffs' to assert the claims in a class action complaint because 'the alternative … would allow named plaintiffs in a proposed class action, with no injuries in relation to the laws of certain states referenced in their complaint, to embark on lengthy class discovery with respect to injuries in potentially every state in the Union.").

how TGIN violated such laws (and even less so, with the particularity required by Rule 9(b)). It is well-established that "state consumer-protection laws vary considerably, and courts must respect these differences rather than apply one state's laws to sales in other states with different rules." *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1018 (7th Cir. 2002). Plaintiff's "one size fits all" approach falls far short of Rules 8 and 9(b).

Plaintiff's claims under other states' consumer protection laws also fail for the reasons previously set forth herein.

## IV.    CONCLUSION

There is no misrepresentation here. For all of the foregoing reasons, TGIN respectfully requests that this Court dismiss the Amended Complaint in its entirety with prejudice.

Dated: October 2, 2023

Respectfully submitted,

/s/ *Heather A. Rice*
Heather A. Rice (#19584)
FRANKLIN & PROKOPIK, P.C.
2 North Charles St., Suite 600
Baltimore, MD 21201
Tel: (410) 752-8700
hrice@fandpnet.com

Meegan Brooks (pro hac vice forthcoming)
BENESCH FRIEDLANDER COPLAN &
ARONOFF LLP
100 Pine Street, Suite 3100
San Francisco, CA 94111
Tel: (628) 600-2250
mbrooks@beneschlaw.com

Sheila M. Prendergast (pro hac vice
forthcoming)
BENESCH FRIEDLANDER COPLAN &
ARONOFF LLP
71 S. Wacker, Suite 1600
Chicago, IL 60606
Tel: (312) 624-6358
sprendergast@beneschlaw.com

31

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 2nd day of October 2023, the foregoing was filed electronically and served electronically upon:

> Steffan Thomas Keeton
> The Keeton Firm LLC
> 100 S Commons
> Ste. 102
> Pittsburgh, PA 15212
> Email: efiling@keetonfirm.com
> *Counsel for Plaintiffs*

Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

/s/ *Heather A. Rice*
Heather A. Rice
