IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Northern Division

| | |
|---|---|
| Oluwakemi Adewol, on behalf of herself and all others similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br>TGINESIS LLC,<br><br>    Defendant. | ELECTRONICALLY FILED<br><br>C.A. NO. 1:23-CV-00509-GLR<br><br>The Hon. George L. Russell, III |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

## TABLE OF CONTENTS

**I.  INTRODUCTION** ..................................................................................................................1

**II. ARGUMENT**........................................................................................................................2

   A.   DEFENDANT IMPROPERLY ASKS FOR FACTUAL INFERENCES IN ITS FAVOR......................................2
   B.   PLAINTIFF STATES PLAUSIBLE CLAIMS AGAINST DEFENDANT........................................................4
       1.   *The Reasonable Consumer Standard* ................................................................................ *4*
       2.   *Defendant's Brand Name Is Deceptively Descriptive* ....................................................... *7*
       3.   *The Ingredient List Defense Does Not Dispel Deception.* ................................................ *8*
       4.   *Plaintiff Alleges Injury in Fact.* ...................................................................................... *11*
   C.   PLAINTIFF SATISFIES RULE 9(B). ....................................................................................................13

**III. CONCLUSION** ..................................................................................................................13

## TABLE OF AUTHORITIES

<u>Cases</u>

*Baynes v. George E. Mason Funeral Home, Inc.*,
   2011 WL 2181469 (W.D. Pa. June 2, 2011) .................................................................................. 11

*Bell v. Publix,*
   982 F.3d 468 (7th Cir. 2020) .................................................................................................. 12, 13

*Brady v. Bayer Corp.*,
   26 Cal. App. 5th 1156, 237 Cal. Rptr. 3d 683 (Ct. App. 2018). ........................................................ 7

*Brunwasser v. Trans World Airlines, Inc.*,
   541 F. Supp. 1338 (W.D.Pa.1982) ................................................................................................ 11

*Corder v. Ford Motor Co.*,
   285 F. App'x 226 (6th Cir. 2008) .................................................................................................. 11

*Giant Food, Inc. v. F.T.C.*,
   322 F.2d 977 (D.C. Cir. 1963) .................................................................................................... 2, 5

*Goldemberg v. Johnson & Johnson Consumer Cos.*,
   8 F. Supp. 3d 467 (S.D.N.Y. 2014) .................................................................................................. 8

*Hinchliffe v. American Motors Corp.*,
   440 A.2d 810 (Conn. 1981) .......................................................................................................... 11

*Holve v. McCormick & Co., Inc.*,
   334 F. Supp. 3d 535 (W.D.N.Y. 2018) ............................................................................................ 6

*In re 5-hour ENERGY Mktg. & Sales Practices Litig.*,
   2014 WL 5311272 (C.D. Cal. Sept. 4, 2014) .................................................................................. 7

*McGinity v. Procter & Gamble Co.*,
   69 F.4th 1093 (9th Cir. 2023) .................................................................................................. 9, 10

*McGinity v. Procter & Gamble Co.*,
   No. 4:20-CV-08164-YGR, 2021 WL 3886048 (N.D. Cal. Aug. 31, 2021) ...................................... 9

*Munsell v. Colgate-Palmolive Co.*,
   463 F. Supp. 3d 43 (D. Mass. 2020) ................................................................................................ 5

*Neuss v. Rubi Rose, L.L.C.*,
   2018 WL 445432 (D.N.J. Jan. 16, 2018) ......................................................................................... 5

*Paulino v. Conopco, Inc.*,
   2015 WL 4895234 (E.D.N.Y. Aug. 17, 2015) ................................................................................. 6

*Resort Car Rental Sys., Inc. v. F.T.C.*,
   518 F.2d 962 (9th Cir. 1975) ........................................................................................................... 5

*Scott v. Western Int'l Surplus Sales, Inc.*,
  517 P.2d 661 (Or. 1973) ................................................................................................... 12

*Sebastian v. Kimberly-Clark Corp.*,
  2017 WL 6497675 (S.D. Cal. Dec. 18, 2017) ...................................................................... 6

*Segedie v. Hain Celestial Grp., Inc.*,
  2015 WL 2168374 (S.D.N.Y. May 7, 2015) ........................................................................ 6

*Souter v. Edgewell Pers. Care Co.*,
  No. 22-55898, 2023 WL 5011747 (9th Cir. Aug. 7, 2023) ................................................ 10

*Williams v. Gerber Prod. Co.*,
  552 F.3d 934 (9th Cir. 2008) ............................................................................................... 1

*York v. Andalou Naturals, Inc.*,
  2016 WL 7157555, (S.D. Ill. Dec. 8, 2016) ..................................................................... 6, 7

I.  **INTRODUCTION**

Defendant TGINESIS, LLC, exploits consumers' preference for natural products by representing to consumers that its vitamins are "natural." Reasonable consumers, including Ms. Adewol, understand these terms to mean that the products include no synthetic ingredients. But the products are not "natural" because they contain multiple ingredients that are synthetic, non-natural, and highly chemically processed.

This is a simple case, and "[t]he facts of this case…do not amount to the rare situation in which granting a motion to dismiss is appropriate." *Williams v. Gerber Prod. Co.*, 552 F.3d 934, 939 (9th Cir. 2008). Defendant scatters multiple arguments across 30 pages seeking dismissal,[1] but ultimately a single question drives the outcome. Under the standard of review for this motion, the only way Defendant's motion can be granted is if the Court holds that no reasonable consumer could interpret "natural" as meaning that the product is free of synthetic ingredients. If the Court believes a reasonable consumer **could** interpret "natural" as meaning that a product lacks synthetic ingredients:

- Plaintiff's MCPA claim survive and the Motion is Denied; and
- Plaintiff's unjust enrichment claim survives and the Motion is Denied.

---

[1] While most of Defendant's arguments fail, Plaintiff will voluntarily dismiss *without* prejudice the unjust enrichment count, claims for injunctive relief, and claims on behalf of the Multi-State Consumer Class.

## II. ARGUMENT

### A. Defendant improperly asks for factual inferences in its favor.

Throughout its brief, Defendant asks the Court to improperly make factual inferences in its favor. While the Court may believe Defendant raises a plausible interpretation, that is not sufficient to dismiss the case. If Plaintiff raises a similarly plausible interpretation of the product label, then the complaint survives dismissal. A statement or omission may convey more than one reasonable meaning, and if one of those meanings is deceptive, it is an actionable deception. *Giant Food, Inc. v. F.T.C.*, 322 F.2d 977 (D.C. Cir. 1963). As one court summarized, "a tie goes to the plaintiffs when there are multiple plausible theories at the pleadings stage of litigation." *Eclectic Properties E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 999 (9th Cir. 2014).

As described herein, Plaintiff adequately pleads that reasonable consumers interpret "natural" to mean that a product is free of synthetic ingredients. This interpretation is supported by academic articles and consumer studies,[2] and precedent from coast to coast.

In its opposition, Defendant presents its interpretation and attempts to improperly introduce evidence[3] to "makes its case." Because Plaintiff's

---

[2] FAC, ¶¶39-40.
[3] For example, Defendant includes a "banner" from the Ulta website despite no indication in her complaint that Plaintiff made her purchase on the Ulta website. Even if Plaintiff had made a purchase on the website and possibly exposed to it, the evidence is not presented with any declaration or request for judicial notice.

interpretation is plausible, the Court needn't analyze the plausibility of Defendant's interpretation at this stage. In other words, if the Court reasons that Plaintiff's interpretation is consistent with a reasonable consumer, then Defendant's interpretation is irrelevant at this stage.

In contrast to the "tie goes to the plaintiff" standard, Defendant asks the Court to "look here" and "ignore this" by selectively examining the Product's label in order to present its case. While these arguments might be persuasive at summary judgment or trial, they are not appropriate at this stage. A key example of this approach is its microscope level of focus on every detail of the label and how that *might* harm Plaintiff's reasonable interpretation. Even upon analysis, Defendant fails to persuade.

Another example is that Defendant argues that the only reasonable interpretation of its "natural" hair, skin, and nails vitamins is that it references "natural hair."[4] Similarly, Defendant claims that the font size of the word "natural" is dispositive while failing to account for the fact that the word "natural" appears as a front-and-center representation in all capital letters and in a larger font size than all other text on its line. Additionally, Defendant claims that because the Product is presented as a gummy bear that it is whimsical and Plaintiff's interpretation is not reasonable. This argument fails to persuade and also fails to account for the fact

---

[4] Applying Defendant's logic, It could easily by "natural hair," "natural skin," or "natural nails" *in addition to* Plaintiff's plausible interpretation that it means the Product is devoid of synthetic ingredients.

that many vitamin products – like the Products at issue – are presented in gummy form.[5] This microscopic analysis of every pixel of the Product label is not appropriate at this stage. Because Plaintiff plausibly pleads a cause of action consistent with a reasonable consumer, there is no need to review any alternative interpretations presented by Defendant.

### B. Plaintiff states plausible claims against Defendant.

#### 1. The Reasonable Consumer Standard

Ms. Adewol's claims of deceptive conduct by Defendant are properly alleged. Defendant represents to consumers that its products are "natural." FAC, ¶¶ 41-46. It makes this representation because Defendant wants every consumer to see this representation because consumers have increased demand for "natural" products. *Id.* In stark contrast to the reasonable consumer's understanding of this representation, Defendant includes multiple synthetic ingredients in every product. FAC, ¶¶ 47-48. Ms. Adewol, interpreting "natural" in the same fashion as the reasonable consumer, relied on Defendant's representation and purchased the products. FAC, ¶¶ 20, 57.

Defendant expends a great deal of energy trying to shift the focus to "natural" vs. "all natural." However, this analysis fails to examine the true focus – the reasonable consumer's interpretation of "natural." The only way Defendant prevails is if the Court finds as a matter of law that no reasonable consumer could interpret

---

[5] *See, e.g. Cimoli v. Alacer Corp.*, 546 F. Supp. 3d 897, 902 (N.D. Cal. 2021).

Defendant's labels in the same fashion as Ms. Adewol. If the Court believes that a single, reasonable consumer could interpret "natural" to mean devoid of synthetic ingredients, then Defendant's request should be denied.

Defendant offers an interpretation of "natural" and contends that this view is the only proper interpretation. However, that is not the standard. While a defendant may offer one potentially plausible interpretation, it does not cut off all other plausible interpretations. Representations capable of being interpreted in a misleading way should be construed against the advertiser. *Resort Car Rental Sys., Inc. v. F.T.C.*, 518 F.2d 962, 964 (9th Cir. 1975). Further, a statement or omission may convey more than one reasonable meaning, and if one of those meanings is deceptive, it is an actionable deception. *Giant Food*, 322 F.2d 977. In this case, the debate over "natural" is – at a minimum – a disputed fact that cannot be disposed of in a Rule 12 proceeding. So, even if Defendant presented one plausible interpretation, it would not foreclose all other plausible interpretations. Even so, Ms. Adewol's interpretation is consistent with that of a reasonable consumer.

As pled, a reasonable consumer believes "100% natural," "all natural," and "natural" are synonymous with being free of synthetic ingredients. Ms. Adewol's interpretation of "natural" is neither novel nor inventive. Rather, it is consistent with not only the consumer studies cited in the complaint but also accepted as a plausible interpretation in federal courts throughout the country:

- *Munsell v. Colgate-Palmolive Co.*, 463 F. Supp. 3d 43, 52 (D. Mass. 2020) (holding consumer reliance "on the prominent display of the word 'natural' on the front of the package is, at this stage, a factual question to be addressed on a full record by the factfinder.");

5

- *Neuss v. Rubi Rose, L.L.C.*, 2018 WL 445432, at *6-8 (D.N.J. Jan. 16, 2018) (holding "natural" labelling on cleaning products which led consumer to believe they were devoid of synthetic ingredients plausibly supported consumer fraud and warranty claims);

- *Goldemberg v. Johnson & Johnson Consumer Cos.*, 8 F. Supp. 3d 467 (S.D.N.Y. 2014) (held that defendant's "Active Naturals' brand name on defendant's labels and advertising could be misleading to a reasonable consumer and form the basis for consumer protection and warranty claims);

- *Segedie v. Hain Celestial Grp., Inc.*, 2015 WL 2168374, at *11 (S.D.N.Y. May 7, 2015) (held "it is enough that Plaintiffs allege that 'natural' communicates the absence of synthetic ingredients[,]" and resolution of this issue can be resolved only by a factfinder, not a Rule 12(b)(6) motion);

- *Paulino v. Conopco, Inc.*, 2015 WL 4895234, at *3 (E.D.N.Y. Aug. 17, 2015) (held that "Suave Naturals" could convey to a reasonable consumer that the product lacked synthetic ingredients and form the basis for a consumer protection claim);

- *Holve v. McCormick & Co., Inc.*, 334 F. Supp. 3d 535, 558 (W.D.N.Y. 2018) (held that "natural" labeling could convey to a reasonable consumer that the products lacked synthetic ingredients and form basis for a consumer protection claim);

- *York v. Andalou Naturals, Inc.*, 2016 WL 7157555 (S.D. Ill. Dec. 8, 2016) (held that the defendant's "Andalou Naturals" trademark could convey to consumers that its products were devoid of synthetic ingredients and supported plausible consumer protection and warranty claims);

- *Sebastian v. Kimberly-Clark Corp.*, 2017 WL 6497675 (S.D. Cal. Dec. 18, 2017) (holding that "Natural Care" product name could lead a reasonable consumer to believe that the product is free of synthetic ingredients);

- *Binakonsky v. JM Brands, Inc.*, 2022 WL 2757674, at *5 (W.D. Pa. July 14, 2022) (plaintiff's interpretation that "natural hair care" on a shampoo meant the product was free of synthetic ingredients is plausible);

- *Early v. Henry Thayer Co., Inc.*, 2021 WL 3089025, at *15 (E.D. Mo. July 22, 2021) ("The Court declines to hold as a matter of law that [defendant's] use of the term 'natural' or 'natural remedies' on its products labels could not be interpreted by a reasonable consumer to mean the product does not contain artificial or synthetic ingredients.").

6

Consistent with this lineage of cases stretching from coast to coast, Ms. Adewol has properly alleged plausible claims that violate the MCPA.

### 2. Defendant's Brand Name Is Deceptively Descriptive

Defendant claims that a brand name cannot be deceptively descriptive, and as a result, its "natural" vitamins cannot be deceptively represented. Not so. First, a trademark can be descriptive of a consumer good. This was thoroughly discussed in *Good 'N Nat.*:

> Several factors lead the Court to conclude that the term "Good 'N Natural" is merely descriptive. The predominant import of the term is to describe an essential distinguishing characteristic of the products: they are **composed of natural ingredients**. This meaning could not be conveyed in a more directly descriptive manner. The secondary meaning of the term is that natural vitamins are "good," that is, healthful. Again, this association requires no leap of imagination in the mind of the consumer. When juxtaposed, the resulting term imparts no additional meaning—the term still conveys only that **the vitamins are made from natural ingredients** and are therefore healthful.

*Good 'N Nat. v. Nature's Bounty, Inc.*, 1990 WL 127126, at *5 (D.N.J. Aug. 30, 1990) (emphasis added). Second, courts throughout the country have held that a deceptive trademark can form the basis of a consumer protection or warranty claim:

- In *York v. Andalou Naturals, Inc.*, the court found that the defendant's "Andalou Naturals" trademark could convey to consumers that its products were devoid of synthetic ingredients. 2016 WL 7157555, (S.D. Ill. Dec. 8, 2016).

- In *Brown v. Hain Celestial Grp., Inc.,* the court found that defendant's "Avalon Organics" brand name could convey to consumers that its products were made from organic ingredients. 913 F. Supp. 2d 881, 895 (N.D. Cal. 2012).

7

- In *In re 5-hour ENERGY Mktg. & Sales Practices Litig.*, the court held that defendant's trademark "5-hour Energy" could form the basis for a consumer protection claim. 2014 WL 5311272, at *19 (C.D. Cal. Sept. 4, 2014).

- In *Brady v. Bayer Corp.*, the court held that defendant's "One a Day" brand name formed the basis for a consumer protection claim. 26 Cal. App. 5th 1156, 1172, 237 Cal. Rptr. 3d 683, 696 (Ct. App. 2018).

- In *Goldemberg v. Johnson & Johnson Consumer Cos.*, the court held that defendant's "Active Naturals' brand name on defendant's labels and advertising could be misleading to a reasonable consumer and form the basis for a consumer protection claim. 8 F. Supp. 3d 467 (S.D.N.Y. 2014).

- *Early v. Henry Thayer Co., Inc.*, 2021 WL 3089025, at *12 (E.D. Mo. July 22, 2021)("even if the term 'Natural Remedies' is part of [defendant's] trade name, this fact does not defeat Plaintiff's claim.").

### 3. The Ingredient List Defense Does Not Dispel Deception.

Defendant argues throughout its brief that the ingredients list on the back of the Product's label dispels deception. However, reasonable consumers are not required to dispel a front-label deception by reviewing the ingredients list. Any indication that Ms. Adewol has taken the product label's words out of context is a red herring. The reasonable consumer is not required to parse and digest every aspect of a product label. *Bell*, 982 F.3d at 476 (7th Cir. 2020) ("Many reasonable consumers do not instinctively parse every front label or read every back label before placing groceries in their carts."). Further, the most important factor "is how real consumers understand and react to the advertising." *Id*. In joining the First, Second, and Ninth circuits, the *Bell* court held that "an accurate fine-print list of

ingredients does not foreclose as a matter of law a claim that an ambiguous front label deceives reasonable consumers." *Id.*

The logic of the First, Second, Seventh, and Ninth circuits makes sense and should be followed in this case. The reasonable consumer has a limited window of time to review the product's label, and they rely on the prominent representations made on the product's front label. The company, on the other hand, has an indefinite amount of time to design a label that captures the shopper's attention as they stroll down the aisle. Therefore, voluntary representations prominently made on the front of a label must conform to the reasonable consumer's understanding of that representation. The studies cited in the complaint note, "[e]ighty-six percent of consumers expect a 'natural' label to mean processed foods do not contain any artificial ingredients" and "the vast majority of respondents stated a belief that 'natural' signals no artificial flavors, colors and/or preservatives." FAC, ¶¶ 39-40.

*McGinity* is the most recent appellate court opinion cited by Defendant, and there are significant distinctions between *McGinity* and the case *sub judice*. While both cases concern false claims premised on "natural" representations, the facts greatly differ.

First, the district court in *McGinity* found that defendant's use of "nature" – rather than "natural" – was "significant" in making its decision. *McGinity v. Procter & Gamble Co.*, 2021 WL 3886048, at *3 (N.D. Cal. Aug. 31, 2021) ("[Defendant's] lack of use of the word 'Natural' in its labeling and packaging is significant."). Here,

9

the Products' label proclaims "NATURAL" on the front of the label in all capital letters and in a size bigger than any other text on its line.

Second, the survey data in *McGinity* presented by plaintiff showed that the representations were not misleading. *McGinity v. Procter & Gamble Co.*, 69 F.4th 1093, 1096 (9th Cir. 2023) ("69.2% of consumers thought that the phrase "Nature Fusion" meant that the product contained both natural and synthetic ingredients."). Here, the First Amended Complaint includes numerous references to studies showing that Plaintiff's interpretation is the same as the majority of consumers. FAC, ¶40 n.10 ("The vast majority of respondents stated a belief that 'natural' signals no artificial flavors, colors and/or preservatives."); FAC, ¶39 (cites consumer studies indicating that 86% of consumers align with Plaintiff's interpretation of "natural."). "Consumer surveys offer opportunities for the court ... to see current consumer understandings of [ ] products as well as identify points of ambiguity, confusion, or blatant falsity amongst the labeling." *McGinity*, 69 F.4th at 1100.

Third, while Defendant claims that Defendant's deception may be clarified by examining the ingredients list on the back label, that argument fails. The ingredients list merely conveys that ingredients are present in the product, but it fails to indicate that the other ingredients are synthetic or a specified percentage of ingredients that are natural or synthetic in the Product.[6] The ordinary reasonable consumer is not aware of an ingredient's status as synthetic or natural based solely

---

[6] For example, language like "X% natural" or "contains synthetic ingredients" might dispel a deception, but no similar language is included.

on the ingredient's name.[7] *Souter v. Edgewell Pers. Care Co.*, 2023 WL 5011747, at *2 (9th Cir. Aug. 7, 2023) ("The ordinary reasonable consumer has very little scientific background."). The case *sub judice* is far different than the case before the Ninth Circuit in *McGinity*.

### 4. Plaintiff Alleges Injury in Fact.

Plaintiff alleges injury in fact because she lost money as the victim of conduct prohibited by the MCPA. FAC, ¶64. Courts have held that an ascertainable loss is present where a consumer is deceived into purchasing a product. *Baynes v. George E. Mason Funeral Home, Inc.*, 2011 WL 2181469, at *5 (W.D. Pa. June 2, 2011) (ascertainable loss present where plaintiff lost money by purchasing a casket thought to be bronze but was in fact made of steel). The underlying logic makes sense. If a consumer is led to believe that a product has "X" characteristic, spends money in reliance of this representation, and later discovers the deception as to this fact, they have suffered an injury.

Further, she pleads that she paid a premium for the product because of Defendant's misrepresentation. FAC, ¶61. At this stage, a plaintiff is not required to include comparison prices, expert reports, or additional analysis. *See, e.g.*, *Brunwasser v. Trans World Airlines, Inc.*, 541 F. Supp. 1338, 1346–47 (W.D. Pa. 1982) (holding that the term "ascertainable loss" must be liberally construed and that "the ascertainable loss requirement of this act is designed merely to insure

---

[7] For example, dihydrogen monoxide might sound like a synthetic ingredient, but there is no doubt that water is a natural ingredient.

that individuals bringing suit have in fact been damaged by a deceptive trade practice."). Federal circuit and state supreme courts in other jurisdictions have held similarly. *See Corder v. Ford Motor Co.*, 285 F. App'x 226, 229-30 (6th Cir. 2008) (ascertainable loss present where consumer deceived that product "generally is more valuable"); *Hinchliffe v. American Motors Corp.*, 440 A.2d 810, 813–14 (Conn. 1981) ("[T]he inclusion of the word "ascertainable" to modify the word "loss" indicates that plaintiffs are not required to prove actual damages of a specific dollar amount. "Ascertainable" means "capable of being discovered, observed or established."); *Scott v. Western Int'l Surplus Sales, Inc.*, 517 P.2d 661, 663 (Or. 1973) ("[T]he plaintiff did not have to prove in what amount the value of the tent [he had purchased] was reduced because it was not as represented. He merely had to prove he suffered some loss.").

At this stage, Ms. Adewol has adequately pled an economic injury. Ms. Adewol asserts that she paid a price premium, and paid more for the product than she would have without the deception. FAC, ¶¶60-67. Additionally, "[t]he products Plaintiff and the Class Members received were worth less than the products for which they paid." FAC, ¶64. Further, she asserts that consumers like her will pay more for products marketed as natural and cites to consumer studies showing that consumers attribute value to "natural" representations. FAC, ¶¶60-67. Additionally, the choice by Defendant to place "NATURAL" at the center of the consumer facing side of its bottle shows that it is a valuable representation to consumers. As noted in a recent Seventh Circuit decision, "Billions are spent every

12

year on behavioral research by the marketing industry in order to understand consumer biases and heuristics. Armed with this information, marketers engage in various strategies to increase sales." *Bell v. Publix,* 982 F.3d 468, 481 (7th Cir. 2020). Ms. Adewol was deceived and spent money in reliance on the deception therefore she has been injured.

### C. Plaintiff Satisfies Rule 9(b).

Plaintiff satisfies Rule 9(b)'s requirements of who (Defendant), what (the Product), when (within the past two years), where (Ulta store located in Howard County, MD), and how (misrepresents ingredients in its Product by deceptively labeling the Product as "natural" despite including synthetic ingredients). *See* FAC, ¶20.

## III. CONCLUSION

As stated in the Introduction, this is a simple case that focuses on a single question: could a reasonable consumer interpret "natural" to mean that a product is devoid of synthetic ingredients? If the Court follows consumer studies and the long line of cases from coast to coast, then the First Amended Complaint should survive. As the *Bell* court noted, "What matters here is how consumers actually behave— how they perceive advertising and how they make decisions. These are matters of fact, subject to proof that can be tested at trial, even if as judges we might be tempted to debate and speculate further about them." 982 F.3d 468, 481 (7th Cir. 2020).

For the foregoing reasons, the Court should deny the Motion to Dismiss in its entirety.[8] To the extent the Court determines that the pleadings are deficient in any respect, Plaintiff respectfully requests leave to amend.

Dated: October 30, 2023

Respectfully submitted,

/s/ Steffan T. Keeton
Steffan T. Keeton, Esq.
Pa. Id. No. 314635
stkeeton@keetonfirm.com

**The Keeton Firm LLC**
100 S Commons, Ste. 102
Pittsburgh, PA 15212
1-888-412-5291

*Attorney for Plaintiff and the Class*

---

[8] Other than the previously dismissed claims concerning injunctive relief, unjust enrichment, and claims on behalf of a Multi-State Consumer Class.

## CERTIFICATE OF SERVICE

I hereby certify that on this 31st day of October, 2023, a true and correct copy of this Memorandum was filed with the Court via the Electronic Case Filing System, and was served on all counsel of record through the same means.

/s/ *Steffan T. Keeton*
Steffan T. Keeton, Esq.