IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Northern Division

| | |
|---|---|
| Oluwakemi Adewol, on behalf of herself, and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TGINESIS LLC,<br><br>Defendant. | Case No. 1:23-CV-00509-GLR |

**DEFENDANT TGINESIS LLC'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS**

In response to TGIN's Motion to Dismiss, Plaintiff has abandoned nearly all of her claims. She no longer seeks injunctive relief—tacitly admitting she does *not* face a risk of future injury. (Opp. at p. 1, n.1.) She no longer seeks unjust enrichment (*id.*), which makes sense, as she lacks standing to bring such a claim under Illinois law. She has also dropped her claims under other states' consumer protection statutes. (*Id.*) And she does not even try to substantiate her hollow claim that citric acid—one of the only two ingredients at issue in this case—is not "natural."

Plaintiff's sole remaining cause of action, under the Maryland Consumer Protection Act ("MCPA"), also fails. To state a claim, Plaintiff must plausibly allege that reasonable consumers in the Gummies' <u>target audience</u>, viewing the label <u>as a whole</u>, would be deceived. Plaintiff's Opposition brief merely asserts in conclusory fashion that *some* customers (*not* TGIN's target customers) might interpret the word "natural" (in a vacuum, rather than in the TGIN brand name) to mean the product contains zero synthetic ingredients. This straw man argument cannot satisfy her pleading burden. The brand name "Thank God Its Natural®*" is simply that—a brand name—

which tells TGIN's target consumers that its products are intended to help them embrace their natural hair. Plaintiff's generalized argument about how the word "natural" might be interpreted by other consumers in other contexts does not say otherwise.

Moreover, even if some consumers could interpret "Natural®*" to refer to ingredients, Plaintiff's claim still fails for a number of cascading reasons—any one of which would justify dismissal:

First, Plaintiff has not plausibly alleged that reasonable consumers would interpret the TGIN brand name to mean that the Gummies are 100% natural (as opposed to, say, 98% natural). Indeed, Plaintiff does not dispute that nearly every ingredient in the Gummies *is* natural. Nor does she allege facts to suggest it would be deceptive to use the word "natural" where all but the most minor ingredient in the Gummies, Allura Red (E129 FD&C Red No. 40) ("Red 40") (responsible for the Gummies' unnatural pink color), are natural.

Second, even if some customers interpreted "Natural®*" to mean "100% natural" (which case law says they do not), the asterisk on the brand name leads customers to the back of the label, where the ingredient list clearly discloses the presence of Red 40.

Finally, even if she could overcome both of the previous hurdles (which she cannot), Plaintiff's MCPA claim still fails because she has not plausibly alleged any objectively identifiable loss caused by this alleged misrepresentation. Indeed, Plaintiff does not even allege that she paid more than the Gummies were worth, or that Gummies containing Red 40 are somehow worth less than Gummies that do not contain this most minor ingredient.

I. **ARGUMENT**

    a. **Plaintiff Fails to Allege that the TGIN Packaging—As Opposed to the Word "Natural" in a Vacuum—Would Mislead a Reasonable Consumer in the Gummies' Target Audience**

1

Maryland law is clear that dismissal at the pleadings stage is appropriate where a court can conclude, as a matter of law, that an advertisement is not deceptive. *See Ramsay v. Sawyer Prop. Mgmt. of Md., LLC*, 2016 WL 6583892 at \*16 (Md. Ct. Spec. App. Nov. 4, 2016) (dismissing MCPA claims where, as here, the theory of deception "[depends] on an objectively unreasonable interpretation of [a] statement."); *see also Axon v. Florida's Natural Growers, Inc., et al.*, 813 F. App'x 701 (2d Cir. 2010) (holding that plaintiff's claims of deception failed as matter of law because it was implausible that a reasonable consumer would be misled by use of the word "natural" in the product's brand name).

Rather than attempting to argue that the Gummies' packaging is deceptive, however, Plaintiff's Opposition simply relies on generic arguments about the word "natural" in a vacuum, wholly detached from the Gummies and the context in which the word appears on their packaging. (*See, e.g.,* Opp. at p. 13 ( "this is a simple case that focuses on a single question: could a reasonable consumer interpret 'natural to mean that **a product** is devoid of synthetic ingredients?") (emphasis added); *id*. at p. 5 ("If the Court believes that a single, reasonable consumer could interpret 'natural' to mean devoid of synthetic ingredients, then Defendant's request should be denied.").) These allegations do not help Plaintiff state a false advertising claim because, under Maryland law, "a statement cannot be viewed in a vacuum; rather it must be viewed in the context in which it was made, along with other representations to the consumer." *Ramsay*, 2016 WL 6583892 at \*16-17 (upholding dismissal of MCPA claims when "reading the document as a whole, without emphasizing the words apart from their context, the statement here could not have misled a reasonable consumer"); *see also McGraw v. Loyola Ford, Inc*., 723 A.2d 502, 512 (Md. Ct. App. 1999) ("A statement cannot simply be removed from the context of the representation as a

whole.").[1]  Moreover, the "reasonable consumer" test does not consider just any consumer; instead, it looks to a consumer in the target audience for the product—here, consumers looking for haircare products specifically formulated for curly, coily, kinky and wavy hair textures, *i.e.* "natural hair." *Luskin's Inc. v. Consumer Protection Div.*, 353 Md. 335, 356 (Ct. App. 1999) ("In the case of alleged deceptive advertising, the product or service advertised and the target audience of the ad are of critical importance.").[2]

Here, Plaintiff urges the Court to discard these well-established standards by ignoring the specific way in which the word "natural" appears on the Gummies' label.  Her argument that "a microscopic analysis of every pixel of the Product label is not appropriate at this stage" turns the relevant test on its head.  (Opp. at p. 4.)

As shown in TGIN's Motion, context is crucial to how TGIN's target customers would interpret "Natural®*" within the "Thank God It's Natural®*" brand name. Namely, the term appears: (1) only once; (2) within the product's logo; (3) in small, pale text, below large lettering

---

[1] This is also consistent with federal courts across the country interpreting the reasonable consumer standard at the pleading stage. *See McGinity v. Proctor & Gamble Co.*, 69 F.4th 1093, 1096-97 (9th Cir. 2023) ("Determining whether a complaint states a plausible claim for relief is a 'context-specific task,' requiring 'the reviewing court to draw on its judicial experience and common sense'… The touchstone under the "reasonable consumer" test is whether the product labeling and ads promoting the products have a meaningful capacity to deceive consumers.") (citations omitted); *Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013) (holding that "context is crucial" in determining whether a reasonable consumer be misled by a particular statement); *Renfro v. Champion Petfoods USA, Inc*, 25 F.4th 1293, 1304 (10th Cir. 2022) (holding that an allegedly deceptive phrase "can only be understood in the context of the entire packaging"); *Song v. Champion Petfoods USA, Inc.*, 27 F.4th 1339, 1345 (8th Cir. 2022) (holding no reasonable consumer who viewed the entire package of the product would be misled).

[2] *See also* Restatement (Third) of Unfair Competition (1995) § 3, cmt. b ("The materiality of a representation, like its meaning, must be determined from the perspective of the audience to whom it is directed.... If a significant number of prospective purchasers are likely to attach importance to the representation in determining whether to engage in a proposed transaction, the representation is material.").

that spells out TGIN; (4) followed immediately by a trademark registration symbol; (5) followed, in turn, by an asterisk; and (6) separated from the Product's name and contents by a horizontal line. (*See* Am. Compl. at ¶ 43.) As discussed in TGIN's Motion, each of these factors would prevent reasonable consumers from sharing Plaintiff's unreasonable interpretation of the label. Indeed, courts across the country have consistently dismissed similar "natural" claims based on the same factors present here. *See Axon*, 813 F. App'x at 705; *Mustakis v. Chattern,* No. 20-cv-5895, 2022 WL 714095, *3 (E.D.N.Y. Mar. 9, 2022); *Lisowski v. Henry Thayer Co.,* 501 F. Supp. 3d 316 (W.D.P.A. 2020); *Pelayo v. Nestle USA, Inc.,* 989 F. Supp. 2d 973, 978-79 (C.D. Cal. 2013); *see also McGinity,* 69 F.4th at 1093. For example, in *Axon v. Florida's Natural*, the Second Circuit affirmed dismissal based on a finding that no reasonable consumer would be misled by the use of the word "natural" on the label of "Florida's Natural" orange juice where, like here, "the term 'natural' occurred **only** within the brand name 'Florida's Natural' and nowhere else on the packaging" and "[t]he packaging does not describe the orange juice as 'natural' on a stand-alone label or as '100% natural.'" *Axon,* 813 F. App'x at 705 (emphasis added).

Plaintiff has no response to any of the factors above, other than that the Court should ignore them. (Opp. at 3-4.) Plaintiff also does not attempt to distinguish *Axon* or any of TGIN's other cited authorities. Nor do the cases cited by Plaintiff suggest that courts are split on this issue. Instead, each of Plaintiff's cases are readily distinguishable:

- In *Munsell v. Colgate-Palmolive Co.*, the packaging at issue prominently featured the word "natural" on the front panel and several other places separate from the brand name, including a section labeled "what's inside matters," and provided a description of what the brand believes makes a product "natural and good." *Munsell v. Colgate-Palmolive Co*., 463 F. Supp. 3d 43, 48 (D. Mass. 2020). In contrast, TGIN makes no reference to the term "natural" except through its brand name.

- In *Neuss v. Rubi Rose*, the packaging represented the products were "natural, baby-safe, made from plants and/or free of SLES, SLES Parabens & Formaldehyde." The plaintiff further relied on the brand's statements that "each [product] is created with naturally-based

4

ingredients that are environmentally safe, biodegradable, and free of parabens, SLES, and phthalates, as well as synthetic dyes or fragrances" and "[m]ade with only non-toxic, plant-based ingredients." *Neuss v. Rubi Rose*, L.L.C., No. CV162339MASLHG, 2018 WL 445432, at *6 (D.N.J. Jan. 16, 2018). Here, Plaintiff does *not* claim that she relied on anything other than the isolated use of the word "natural" on the product's label.

- *Goldenberg v. Johnson & Johnson Consumer Cos.*, unlike this case, involved multiple claims made on the product's website and Facebook page, as well as the product's packaging. *Goldemberg v. Johnson & Johnson Consumer Companies, Inc*., 8 F. Supp. 3d 467, 480 (S.D.N.Y. 2014). The court never held that the trademark or brand name at issue could, standing alone, form the basis of the plaintiff's consumer protection claim.

- *Sebastian v. Kimberly-Clark Corp*., *Paulino v. Conopco,* and *Binakonsky v. JM Brands*, Inc. all involved allegations that the products' packaging reflected "natural imagery," such as natural environments, green coloring, natural objects. *Sebastian v. Kimberly-Clark Corp*., No. 17CV442-WQH-JMA, 2017 WL 6497675, at *4 (S.D. Cal. Dec. 18, 2017); *Paulino v. Conopco, Inc*., No. 14-CV-5145 JG RML, 2015 WL 4895234, at *4 (E.D.N.Y. Aug. 17, 2015). Plaintiff does *not* dispute that the Gummies' hot pink and black label is devoid of such imagery.

- In *Segadie v. Hain Celestial Grp., Inc.*, 14-cv-5029, 2015 WL 2168374 (S.D.N.Y. May 7, 2015) and *Holve v. McCormick and Co.,* 334 F. Supp. 3d 535 (W.D.N.Y. 2018), the products at issue included freestanding (meaning, not in the products' brand names) claims that the products were either "natural" or "all natural." By contrast, the Gummies make no standalone claims that their ingredients are "natural" or "all natural."

- In *Brown v. Hain Celestial Group*, the court did *not* hold—as Plaintiff claims—that the product's brand name, standing alone, could form the basis of the plaintiff's consumer protection claim. Regardless, there (unlike here), the front label "prominently" displayed the word "Organics" in the brand name *and* included a pledge that the product was "pro-organic." *See Brown v. Hain Celestial Group*, 913 F. Supp. 2d 881, 885 (N.D. Cal. 2012).

- The court in *In re 5-hour Energy Mktg. & Sales Practices Litig*. also did *not* hold that the brand name "5-Hour Energy" was sufficient to support plaintiffs' consumer protection claims. Instead, the court considered other statements on the label, including the phrases, "5 hours of energy now," "Hours of energy now," and "no crash." The court held that because those claims were "prominently displayed on 5–hour ENERGY's label and packaging, and [were] a key part of 5–hour ENERGY's advertising," and because "5-Hour Energy is sold as an energy drink," it was plausible that a reasonable consumer could be misled by the claims.

- *Brady v. Bayer Corp*., MDL-13-2438, 2014 WL 5311272 (C.D. Cal. Sept. 4, 2014) concerned claims that the vitamin brand, "One A Day," was deceptive because consumers were supposed to take two vitamins, not one, in order to get a full dosage. This is an extreme case of descriptive labeling, where a common-sense reading of the brand name would make the user come to one, specific conclusion. It is not akin to TGIN's use of the word "natural" in the full text of its brand name (which refers to users' natural hair)—

5

particularly where, in Brady, the text of the brand name was written in "billboard, sunburst-backed brand name print." Here, the word "natural" here is so small that Plaintiff had to enlarge a picture of the label to make the lettering legible in her Amended Complaint.

Plaintiff also fails to meaningfully respond to TGIN's argument that, even reading "Natural®*" to refer to ingredients, the label would not be deceptive because practically every ingredient in the product *is* natural. Although the Amended Complaint takes issue with two allegedly non-natural ingredients—citric acid and Red 40—the Opposition ignores TGIN's argument that citric acid is commonly derived from nature (and that Plaintiff does not allege any facts to support her claim that the citric acid within the Gummies is *not* natural). Thus, this case boils down to a single ingredient—Red 40—which is conspicuously included on the ingredient list, and which is also the most minor ingredient in the entire product (and the reason for the Gummies' unnatural pink color).

Plaintiff responds that the word "natural" may, in some irrelevant contexts, be read to mean 100% natural or "devoid of synthetic ingredients," but does not explain why consumers would interpret the Gummies' label this way. Indeed, *nothing* on the packaging indicates that the Gummies are "all natural," "pure," or "100% natural"—the only reference to "natural" appears in some of the smallest font on the label and solely within in the Gummies' brand name.

Even assuming that the use of "Natural®*" in the Gummies' brand name creates some ambiguity (which it does not), the ingredient list on the side label of the Gummies would dispel any confusion. *See McGinity,* 69 F.4th at 1099 ("The ingredients list, which [plaintiff] alleges includes many ingredients that are synthetic and that a reasonable consumer would not think are natural, clarifies that the rest of the ingredients are artificial and that the products thus contain both natural and synthetic ingredients."); *Matthews v. Polar Corp.*, No. 22-CV-649, 2023 WL 2599871 at *7 (N.D. Ill. Mar. 22, 2023) (the ingredient list "is one piece of 'all the information available to consumers' and is therefore relevant to determining whether reasonable consumers would be

misled."); *Brown v. Kellogg Sales Co.*, No. 1:20-CV-7283-ALC, 2022 WL 992627 at *6 (S.D.N.Y. Mar. 31, 2022) (*"*To the extent the label contains any ambiguity…courts are to consider 'disclaimers and qualifying language'.... Here, the reasonable consumer would overcome any confusion by referring to the unambiguous ingredient list on the packaging.")

The Court should disregard Plaintiff's strained attempts to distinguish *McGinity*. The Ninth Circuit did not rely on the alleged distinction between the terms "Nature" and "Natural," as Plaintiff claims (Opp. at 9.) Nor did the Court conclude that the claims at issue were not misleading—instead, the Court held that the statements, which were accompanied by an image of an avocado on a green leaf, were open to multiple interpretations and, therefore, <u>ambiguous</u>, which appears to be Plaintiff's same argument here. (*See* Opp. at p. 3 ("It could easily by [sic] 'natural hair,' 'natural skin,' or 'natural nails' in addition to Plaintiff's plausible interpretation[.]").[3] And here, Plaintiff's vague reference to a consumer survey cited in her Amended Complaint that purports to show how consumers view the word "natural" in a vacuum does not help her distinguish the present case, as Plaintiff does *not* claim that this survey concerned TGIN consumers' interpretations of the Gummies' packaging.

Plaintiff also claims that reasonable consumers might not know which ingredients on the Gummies' ingredient list are natural. However, *McGinty* implicitly rejected this precise argument by holding that the disclosure of non-natural ingredients on the ingredient list prevents consumer deception. *McGinity*, 69 F.4th at 1099 ("The ingredients list…clarifies that the rest of the ingredients are artificial and that the products thus contain both natural and synthetic ingredients.').

---

[3] Notably, Plaintiff does *not* take issue with Defendant's interpretation of the word "natural" as referring to the natural hair of its users, which is the focus of TGIN's brand and the reason why the word "natural" is used in the brand name.

In any event, reasonable consumers would not believe "Allura Red (E129 FD&C Red No. 40)," listed as the final ingredient for pink, bear-shaped gummies vitamins, is an all-natural ingredient.

Finally, here, unlike in *McGinity*, the "Natural®*" representation at issue includes an asterisk, which directs customers to the portion of the label containing the ingredient list. The presence of an asterisk next to the very word that Plaintiff alleges is deceptive would lead the reasonable consumer to turn the packaging over to the side and read the rest of the label, where they would be confronted by the ingredient list—disclosing the presence of Red 40. *See Richardson v. Edgewell Pers. Care, LLC*, No. 21-CV-08275 (PMH), 2023 WL 1109646, at *6 (S.D.N.Y. Jan. 30, 2023) (finding that an asterisk appended to a representation that a product was "Reef Friendly" would lead the reasonable consumer to search for a corresponding asterisk elsewhere on the label). Thus, TGIN customers are even more likely to view the ingredient list than the customers in *McGinity*.

### b. Plaintiff Fails to Adequately Allege a Cognizable Injury with Particularity

Plaintiff's Opposition brief does not identify any facts in the Amended Complaint to establish an "objectively identifiable loss," as required to state a claim under the MCPA. Instead, the Opposition repeats the same conclusory, unsupported theories from the Amended Complaint: (1) that she would not have bought the Gummies if she had known they contained a minor non-natural ingredient, and (2) that she paid a "price premium" because, generally speaking, natural products are allegedly worth more than non-natural products. Plaintiff does not cite a single Maryland case to support either theory—for good reason: neither of these theories amount to the kind of "objectively identifiable loss" that private plaintiffs must establish to bring a claim under the MCPA.

Plaintiff's first theory conflates the MCPA's injury requirements with its separate requirements for deceptive acts and causation. To prevail on a private MCPA claim, private plaintiffs must allege: (1) an unfair or deceptive practice or misrepresentation, (2) that Plaintiff relied upon, and (3) that cause[d] [her] actual injury." *Agomuoh v. PNC Fin. Servs. Grp.*, No. GJH-16-1939, 2017 WL 657428, at *12 (D. Md. Feb. 16, 2017) (dismissing claims under the MCPA and 9(b)). Public enforcers, on the other hand, must only prove the first two prongs. *See Citaramanis v. Hallowell,* 328 Md. 142, 613 (Md. 1992). Thus, the "actual injury" requirement was specifically imposed to ensure that plaintiffs bringing claims were actually harmed by the allegedly deceptive conduct at issue. While buying a product based on a deceptive advertisement may satisfy the reliance and misrepresentation prongs, the injury prong requires something more.[4] *Shaulis v. Nordstrom, Inc.*, 865 F.3d 1, 11 (1st Cir 2017) (rejecting the theory "that the mere purchase of an item may constitute cognizable injury, regardless of the item's specific qualities" because "it merges the alleged deception with the injury").[5] Because Plaintiff has not alleged any separate actual injury, she cannot state an MCPA claim. *Jones v. Koons Auto., Inc.*, 752 F. Supp. 2d 670, 684 (D. Md. 2010) (finding complaint failed to allege any "cost of remedy" or other actual

---

[4] TGIN disputes that Plaintiff has satisfied any of the three prongs.

[5] Courts across the country have repeatedly rejected plaintiffs' efforts to allege an actual loss by reciting that they would not have bought an item but for the allegedly deceptive practice. *See*, e.g., *Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43, 56 (1999) (finding no injury under New York law where the complaint "sets forth deception as both act and injury"); *Kim v. Carter's Inc.*, 598 F.3d 362, 365–366 (7th Cir. 2010) (it is "not enough that [a retailer's] price comparisons deceived the plaintiffs and induced them to buy [the retailer's] clothing," a plaintiff must allege some independent "actual damages," i.e., "actual pecuniary loss."); *Hennessey v. Gap*, 2023 WL 7511591 (9th Cir. Nov. 14, 2023) (finding no ascertainable loss where plaintiff merely alleges they were fraudulently induced to purchase a product that was no different in quality than defendant represented at the time of purchase"); *Leigh-Pink v. Rio Properties*, LLC, 138 Nev. Adv. Op. 48, 512 P.3d 322 (2022).

harm where plaintiff merely alleged she would not have purchased the car or would have demanded a price concession but for the defendant's alleged deception).

While a plaintiff *may* establish actual loss by alleging facts to show she paid a price premium as a result of the alleged misrepresentation, Plaintiff alleged no such facts here. She does *not*, for example, identify the amount that it would "take to remedy the loss [the plaintiff] incurred as a result of the respondents' alleged deceptive trade practices." *Chambers v. King Buick GMC, LLC*, 43 F. Supp. 3d 575, 621–22 (D. Md. 2014); *Jones*, 752 F. Supp. 2d at 684 (D. Md. 2010); *Legore v. OneWest Bank, FSB*, 898 F. Supp. 2d 912, 920 (D. Md. 2012). "Simply because Plaintiffs here recite the word 'premium' multiple times in their Complaint does not make Plaintiffs' injury any more cognizable." *Izquierdo v. Mondelez,* 2016 WL 6459832, at *7 (S.D.N.Y. Oct. 26, 2016); *see also Jones,* 752 F. Supp. 2d at 683 ("A hypothetical price concession is simply not the type of tangible injury appropriately recognized in a private MCPA action, as virtually any misrepresentation could support such a claim of injury"). Moreover, while Plaintiff asserts that natural items are generally worth more than non-natural items, this broad conclusion says nothing of the Gummies. The specific question here is whether vitamin Gummies containing Red 40 as the most minor ingredient are worth less than other, similar gummies that do not contain Red 40. Plaintiff does not allege any facts to suggest this is the case.

Plaintiff received the exact product she expected, with all of the listed ingredients, at the price she agreed to pay. Plaintiff does not even attempt to claim that she could have purchased similar Gummies elsewhere for less than the amount she paid, or that she paid more than the gummies were worth. Thus, regardless of why Plaintiff allegedly bought the Gummies, she got exactly what she paid for and has not suffered economic harm in result.

**II.    CONCLUSION**

Plaintiff has not alleged, and cannot allege, facts to state a plausible claim that the Gummies' label is false, deceptive, or misleading, nor that she suffered any injury. Leave to amend would be futile. Therefore, for the reasons stated herein and TGIN's opening brief, TGIN respectfully asks that the Court dismiss Plaintiff's Amended Complaint in its entirety with prejudice.

Dated: November 20, 2023

Respectfully submitted,

/s/ *Heather A. Rice*
Heather A. Rice (#19584)
FRANKLIN & PROKOPIK, P.C.
2 North Charles St., Suite 600
Baltimore, MD 21201
Tel: (410) 752-8700
hrice@fandpnet.com

Meegan Brooks (*pro hac vice* pending)
BENESCH FRIEDLANDER COPLAN & ARONOFF LLP
100 Pine Street, Suite 3100
San Francisco, CA 94111
Tel: (628) 600-2250
ssheridan@beneschlaw.com
mbrooks@beneschlaw.com

Sheila M. Prendergast (*pro hac vice* pending)
BENESCH FRIEDLANDER COPLAN & ARONOFF LLP
71 S. Wacker, Suite 1600
Chicago, IL 60606
Tel: (312) 624-6358
sprendergast@beneschlaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 20th day of November 2023, the foregoing was filed electronically and served electronically upon:

Steffan Thomas Keeton
The Keeton Firm LLC
100 S Commons
Ste. 102
Pittsburgh, PA 15212
Email: efiling@keetonfirm.com
*Counsel for Plaintiff*

Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

/s/ *Heather A. Rice*
Heather A. Rice