IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| OLUWAKEMI ADEWOL, on behalf of herself and all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>TGINESIS LLC,<br><br>    Defendant. | *<br>*<br>*    Civil Action No. GLR-23-00509<br>*<br>*<br>* |

***

<u>**MEMORANDUM OPINION**</u>

THIS MATTER is before the Court on Defendant TGINESIS LLC (TGIN")'s Motion to Dismiss (ECF No. 20). The Motion is ripe for disposition, and no hearing is necessary. <u>See</u> Local Rule 105.6 (D.Md. 2023). For the reasons set forth below, the Court will grant the Motion.

## I.    BACKGROUND[1]

Oluwakemi Adewol brings this putative class action complaint against TGIN asserting claims under Maryland's Consumer Protection Act, claims under other state consumer protection statutes, and common law claims for unjust enrichment. (Am. Compl. ¶¶ 77–98, ECF No. 16). Specifically, Adewol alleges that the use of the term "natural" in TGIN's

---

[1] Unless otherwise noted, the Court takes the following facts from the Complaint (ECF No. 1) and accepts them as true. <u>See</u> <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007).

packaging is deceptive because its vitamin products[2] contain synthetic ingredients including Red No. 40 and Citric Acid. (Id. ¶¶ 47–49).

TGIN, an acronym for "Thank God it's Natural," is an Illinois-based company that sells its products in third-party retail stores across the United States. (Id. ¶¶ 21, 43–44, 58; Mem. Supp. Def.'s Mot. Dismiss ["Mot."] at 10, ECF No. 20-1).[3] The labels of all its products contain the company's name, TGIN, followed by, in smaller lettering, "Thank God It's NATURAL®". (Am. Compl. ¶¶ 42–43). Adewol purchased TGIN's Wild Growth Vitamins Hair, Skin + Nails Gummies (the "Product") multiple times from 2020–2022 at third-party retailers throughout Maryland. (Id. ¶ 20). Adewol most recently purchased the Product from an Ulta Beauty store in Howard County, Maryland for $19.99. (Id.).

The Product's ingredients list includes Red No. 40 and Citric Acid. (Id. ¶ 47). Red No. 40 is a "synthetic food coloring that is associated with carcinogenic effects and hyperactivity in children." (Id. ¶ 48). Citric Acid is a synthetic preservative, flavorant, and acidity regulator that is "commonly manufactured through solvent extraction or mycological fermentation of bacteria," and is recognized as an artificial substance by the FDA. (Id.). Adewol argues that because TGIN's Product contains Red No. 40 and Citric Acid, the use of the term "natural" is false and misleading. (Id.). Adewol states that she understands the term "natural" on the Product's label to mean the Product does not contain synthetic ingredients, and she would not have purchased the Product at a premium price

---

[2] Adewol notes that the only product currently "included in this definition" is TGIN's Wild Growth Vitamins Hair, Skin + Nails Gummies. (Id. ¶ 1, n.1.)

[3] Citations to the page numbers refer to the pagination assigned by the Court's Case Management/Electronic Case Files ("CM/ECF") system.

had she been aware that it contained synthetic ingredients. (Id. ¶¶ 20, 44–46). Adewol alleges that "[a] reasonable consumer understands [TGIN's] 'natural' claims to mean that the Products are 'natural' and do not contain synthetic ingredients." (Id. ¶ 52).

The United States Food & Drug Administration ("FDA") has not promulgated a rule on the use of the term "natural" in food labeling. See Use of the Term Natural on Food Labeling, U.S. Food & Drug Administration, https://www.fda.gov/Food/GuidanceRegulation/GuidanceDocumentsRegulatoryInformation/LabelingNutrition/ucm456090.htm (last updated Oct. 22, 2018). However, "[t]he FDA has considered the term 'natural' to mean that nothing artificial or synthetic (including all color additives regardless of source) has been included in, or has been added to, a food that would not normally be expected to be in that food." Id.; see also FDA Notice, 80 Fed. Reg. 69,905-1 (Nov. 12, 2015).

Adewol filed the Complaint in this action on February 24, 2023. (ECF No. 1). Adewol is the only named plaintiff, but Adewol purports to represent a nationwide class of consumers who purchased TGIN's vitamin gummy products and a sub-class of Maryland consumers who purchased the Product in Maryland. (Am. Compl. ¶¶ 15, 68).[4] Adewol alleges that TGIN violated Maryland's Consumer Protection Act ("MCPA"), MD Code Ann. §§ 13-101, et seq. by engaging in "unfair or deceptive trade practices." (Am. Compl.

---

[4] In her Amended Complaint, Adewol purports to represent a multi-state class of all consumers who purchased TGIN's vitamin gummy products, but Adewol voluntarily dismissed without prejudice all claims on behalf of the multi-state consumer class (Am. Compl. ¶¶ 15, 68; Pl.'s Mem. Opp'n Def.'s Mot. Dismiss ["Opp'n"] at 5 n.1, 14, ECF No. 21).

¶¶ 79–84).[5] TGIN filed an initial Motion to Dismiss, (ECF No. 9), which was rendered moot by Adewol's filing of an Amended Complaint on August 17, 2023, (ECF No. 16). TGIN filed a new Motion to Dismiss on October 2, 2023. (ECF No. 20). Adewol filed an Opposition on October 31, 2023, (ECF No. 21), and TGIN filed a Reply on November 20, 2023, (ECF No. 24).

## II. DISCUSSION

### A. Standard of Review

The purpose of a Rule 12(b)(6) motion is to "test[] the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999)). A complaint fails to state a claim if it does not contain a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 677–78 (2009) (quoting Bell Atl. Corp. v.

---

[5] Adewol voluntarily dismissed without prejudice two additional claims against TGIN: (1) unjust enrichment under Illinois Law; and (2) violation of state consumer protection statutes. (Opp'n at 5 n.1; Am. Compl. ¶¶ 88–98). To the extent Adewol states in her introduction to the Opposition that her "unjust enrichment claim survives and the Motion is Denied," (Opp'n at 5), this language contradicts her statements within the same document that she "will voluntarily dismiss without prejudice the unjust enrichment count," (id. at 5 n.1), and that the unjust enrichment claim was "previously dismissed," (id. at 14, n.8). Additionally, Adewol does not raise any substantive argument in response to TGIN's argument that her unjust enrichment claim should be dismissed, so the Court finds that her opposition to that point is waived. See Stenlund v. Marriot Int'l, Inc., 172 F.Supp.3d 874, 887 (D.Md. 2016) ("In failing to respond to [defendant's] argument, Plaintiff concedes the point."); Ferdinand-Davenport v. Children's Guild, 742 F.Supp.2d 772, 777 (D.Md. 2010) (same)).

4

Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678 (citing Twombly, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. Goss v. Bank of Am., N.A., 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012)), aff'd, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, accept the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. See Albright v. Oliver, 510 U.S. 266, 268 (1994); Lambeth v. Bd. of Comm'rs of Davidson Cnty., 407 F.3d 266, 268 (4th Cir. 2005). But the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), or legal conclusions couched as factual allegations, Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).

Adewol's allegations of fraud implicate the heightened pleading standard set forth in Federal Rule of Civil Procedure 9(b).[3] Cozzarelli v. Inspire Pharm. Inc., 549 F.3d 618, 629 (4th Cir. 2008). The rule states: "In alleging fraud . . . a party must state with particularity the circumstances constituting fraud . . . ." Fed.R.Civ.P. 9(b). Under the rule, a plaintiff alleging claims that sound in fraud "must, at a minimum, describe the time, place,

5

and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." U.S. ex rel. Owens v. First Kuwaiti Gen. Trading & Contracting Co., 612 F.3d 724, 731 (4th Cir. 2010) (quoting U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc., 525 F.3d 370, 379 (4th Cir. 2008)). In other words, "Rule 9(b) requires plaintiffs to plead the who, what, when, where, and how: the first paragraph of any newspaper story." Crest Constr. II, Inc. v. Doe, 660 F.3d 346, 353 (8th Cir. 2011) (quoting Summerhill v. Terminix, Inc., 637 F.3d 877, 880 (8th Cir. 2011)).

As the Fourth Circuit has explained, Federal Rule of Civil Procedure 9(b) serves several salutary purposes:

> "First, the rule ensures that the defendant has sufficient information to formulate a defense by putting it on notice of the conduct complained of . . . . Second, Rule 9(b) exists to protect defendants from frivolous suits. A third reason for the rule is to eliminate fraud actions in which all the facts are learned after discovery. Finally, Rule 9(b) protects defendants from harm to their goodwill and reputation."

Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999) (quoting U.S. ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Blue Cross Blue Shield of Ga., Inc., 755 F.Supp. 1055, 1056–57 (S.D.Ga. 1990)). By its terms, however, Rule 9(b) permits a general averment of aspects of fraud that relate to a defendant's state of mind. It states, in part: "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed.R.Civ.P. 9(b). Moreover, a "court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the

6

particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." Harrison, 176 F.3d at 784.

**B.     Analysis**

The MCPA generally prohibits unfair, abusive, or deceptive trade practices in:

> (1) The sale, lease, rental, loan, or bailment of any consumer goods, consumer realty, or consumer services;
>
> (2) The offer for sale, lease, rental, loan, or bailment of consumer goods, consumer realty, or consumer services;
>
> (3) The offer for sale of course credit or other educational services;
>
> (4) The extension of consumer credit;
>
> (5) The collection of consumer debts; or
>
> (6) The purchase or offer for purchase of consumer goods or consumer realty from a consumer by a merchant whose business includes paying off consumer debt in connection with the purchase of any consumer goods or consumer realty from a consumer.

Md. Code Ann., Com. Law § 13-303. The MCPA allows a plaintiff to "bring an action to recover for injury or loss sustained by [her] as the result of a practice prohibited by this title." Com. Law § 13-408(a).

To state a standalone claim under § 13-408 of the MCPA, a plaintiff must allege: "(1) an unfair or deceptive practice or misrepresentation that is (2) relied upon, and (3) causes them actual injury." Bey v. Shapiro Brown & Alt, LLP, 997 F.Supp.2d 310, 319 (D.Md. 2014), aff'd, 584 F.App'x 135 (4th Cir. 2014). The Court analyzes each disputed prong in turn.[6]

---

[6] The parties do not dispute that Adewol alleges that she has satisfied the reliance prong. Adewol claims that she "read and relied upon the representation that the Product was 'NATURAL,' which appears on the front label of the Product." (Am. Compl. ¶ 20.e).

7

### 1. Unfair or Deceptive Practice or Misrepresentation

TGIN first argues that Adewol's MCPA claim must be dismissed because its packaging of the Product is not materially misleading. Adewol argues that the word "natural" on the Product is misleading because the Product contains some amount of synthetic ingredients. At bottom, the Court agrees with TGIN.

"Whether a statement is 'misleading' is judged in Maryland from the point of view of a reasonable but unsophisticated consumer." Botts v. Johns Hopkins Univ., No. ELH-20-1335, 2021 WL 1561520, at *19 (D.Md. Apr. 21, 2021) (citing Luskin's, Inc. v. Consumer Prot. Div., A.2d 702, 712 (Md. 1999)). To determine whether a statement is misleading, courts consider whether the statement "involves information that is important to consumers and, hence, likely to affect their choice of . . . a product." Luskin's, 726 A.2d at 713 (citation omitted). "A statement 'cannot be viewed in a vacuum'; rather, it must be viewed in the context in which it was made, along with other representations to the consumer." Botts, 2021 WL 1561520, at *19 (quoting McGraw v. Loyola Ford, Inc., 723 A.2d 502, 511 (Md. Ct. Spec. App. 1999)).[7]

The Court finds that a reasonable consumer would not be misled by the term "natural" here. The term is contained within the brand name and nowhere else on the Product's label. In Axon v. Florida's Natural Growers, Inc., the Second Circuit affirmed a district court's holding that because the term "natural" occurred only within the brand's name, and nowhere else on the packaging, no reasonable consumer would be misled by the

---

[7] Effective December 14, 2022, the Court of Special Appeals of Maryland was renamed the Appellate Court of Maryland.

product's label. 813 F.App'x 701, 705 (2d Cir. 2020). Here, as with Florida Natural, the word "natural" appears only once on the Product label and only as part of TGIN's logo. (Am. Compl. ¶ 43). The fact that the word "natural" is followed by a registered trademark symbol further indicates that the word is part of TGIN's name and branding and is not "an affirmation of what the product is or how it will perform." See Lisowski v. Henry Thayer Co., Inc., 501 F.Supp.3d 316, 334 n.5; see also Muller v. Blue Diamond Growers, 683 F.Supp.3d 933, 942–43 (E.D.Mo. 2023) (Plaintiff did not plausibly allege a reasonable consumer would be misled by the name Blue Diamond Almonds Smokehouse® to believe the products were prepared in an actual smokehouse where the term smokehouse was qualified by a registered trademark symbol); McKinnis v. Kellogg USA, 2007 WL 4766060, at *4 (C.D.Cal. Sept. 19, 2007) ("No reasonable consumer would view the trademark "FROOT LOOPS" name as describing the ingredients of the cereal.").

Adewol does not allege that the Product label contains representations that the Product is "100% natural" or "all natural." Adewol alleges only that one ingredient, Red 40, which is the least prominent ingredient in the Product, is unnatural and that another ingredient, citric acid, may be unnatural. (Am. Compl. ¶ 48). The Ninth Circuit found in McGinity v. Procter & Gamble Co. that the label of a haircare product containing the phrase "Nature Fusion" "[u]nlike a label declaring that a product is '100% natural' or 'all natural' . . . does not promise that the product is wholly natural." 69 F.4th 1093, 1098 (9th Cir. 2023). The Product here similarly makes no promises that it is comprised of only natural ingredients. A reasonable consumer would not interpret the word "natural" alone to mean that a product is entirely made of natural ingredients.

9

Additionally, the term "natural" on the Product is followed by an asterisk, which directs consumers to the ingredient list. (Am. Compl. ¶¶ 44, 47). "[A] reasonable consumer would not be expected to ignore the asterisk and the information it leads to." Piescik v. CVS Pharmacy, Inc., 576 F.Supp.3d 1125, 1133 (S.D.Fla. 2021); see also Moreno v. Vi-Jon, Inc., No. 20CV1446 JM(BGS), 2021 WL 807683, at *6 (S.D.Cal. Mar. 3, 2021) ("Plaintiff cannot simply look to the statement on the front panel, ignore the asterisk, and claim he has been misled"); Beardsall v. CVS Pharmacy, Inc., No. 16 C 6103, 2019 WL 1168103, at *4–5 (N.D.Ill. Mar. 13, 2019) (finding that a product label was not deceptive where it contained an asterisk directing consumers to the fine print on the back of the bottle), aff'd, 953 F.3d 969 (7th Cir. 2020). This Court has stated that reasonable consumers can be expected to read a product's ingredients list. See Bradby v. Bimbo Bakeries USA, Inc., No. 23-00522-LKG, 2024 WL 1604488, at *6 (D.Md. Apr. 12, 2024) (dismissing complaint where consumer pled that she was misled by "all butter" label into believing a product did not contain artificial ingredients). Here, if Adewol had followed the asterisk to the ingredients list, she would have seen that the Product contained Red 40 and citric acid. (Am. Compl. ¶ 47). A reasonable consumer would not believe that "Allura Red (E129 FD&C Red No. 40)" is a natural ingredient. (Id.).

Maryland courts direct that when considering the perspective of a reasonable consumer, "the target audience of the ad [is] of critical importance." Luskin's, 762 A.2d at 712. TGIN markets itself as a haircare brand for textured or curly hair,[8] which is commonly

---

[8] While a court may not ordinarily consider extrinsic evidence when resolving a Rule 12(b)(6) motion, see Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC,

10

referred to as "natural" hair.[9] In the beauty context, "natural" has many meanings. As Adewol points out, natural could mean "'natural hair', 'natural skin,' or 'natural nails.'" (Opp'n at 3 n.4). The Product is marketed as "Hair Skin and Nails Gummies" and is sold in beauty stores, including the Ulta Beauty store where Adewol purchased the Product. (Am. Compl. ¶¶ 20.a, 43). A reasonable consumer is expected to read the Product's label in context. No reasonable consumer, purchasing a beauty product in a beauty store, would interpret the word "natural" alone to mean that all of the product's ingredients are natural. See Lisowski, 501 F.Supp.3d at 334–35 (dismissing deceptive conduct claim in part because a reasonable purchaser would be expected to read the word "natural," appearing on a beauty product's label seven times, in context) (on partial reconsideration on other grounds, No. 19-1339, 2021 WL 1185924 (W.D.Pa. Mar. 30, 2021)).

---

794 F.Supp.2d 602, 611 (D.Md. 2011), this general rule is subject to several exceptions. For example, a court may consider documents attached to the complaint, see Fed.R.Civ.P. 10(c), as well as those attached to briefing for the motion to dismiss, so long as they are integral to the complaint and authentic, see Blankenship v. Manchin, 471 F.3d 523, 526 n.1 (4th Cir. 2006). Courts may also consider documents referred to and relied upon in the complaint—"even if the documents are not attached as exhibits." Fare Deals Ltd. v. World Choice Travel.com, Inc., 180 F.Supp.2d 678, 683 (D.Md. 2001). Additionally, a court may take judicial notice of information publicly announced on a website, where the website's authenticity is not in dispute and the information "is capable of accurate and ready determination." Fed. R. Evid. 201(b); Jeandron v. Bd. of Regents of Univ. Sys. of Md., 510 F. App'x 223, 227 (4th Cir. 2013). Here, Adewol alleges that she purchased the Product at Ulta Beauty. (Am. Compl. ¶ 20.a). The Court takes judicial notice of the fact that TGIN describes itself on its website as "one of the leading textured hair care brands," and Ulta Beauty markets TGIN as a featured "curly textured hair" brand. See TGIN (last visited June 26, 2024, 3:20 PM), https://tginatural.com/pages/about; Ulta Beauty (last visited June 26, 2024, 3:20 PM), https://www.ulta.com/discover/curly-textured-hair-products.

[9] The Cambridge Dictionary defines natural hair as "thick and curly hair" which "has not been made straight with special chemicals." See Natural Hair, Cambridge Dictionary, (last visited July 1, 2024).

11

Courts consistently dismiss similar claims that a product label is misleading based on the word "natural." See Axon, 813 F.App'x at 705; Mustakis v. Chattern, Inc., No. 20-CV-5895, 2022 WL 714095, *3 (E.D.N.Y. Mar. 9, 2022); In re Gen. Mills Glyphosate Litig., No. 16-2869 (MJD/BRT), 2017 WL 2983877, at *7 (D.Minn. July 12, 2017); Pelayo v. Nestle USA, Inc., 989 F.Supp.2d 973, 978–79 (C.D.Cal. 2013); see also McGinity, 69 F.4th at 1099 (affirming dismissal of claim where product label contained the word "nature"). The Court finds that the word "natural" here, which is contained in TGIN's brand name, listed on the Product only once, and followed by a trademark symbol and asterisk, is not misleading.

### 2. Actual Injury

TGIN additionally argues that Adewol does not allege that the term "natural" on the product's packaging caused her to suffer a cognizable injury as required by the MCPA. (Mot. at 34–35). Adewol claims that she "paid a premium price for the Products" over and above comparable products that did not purport to be "natural" and that the products she and class members "received were worth less than the products for which they paid." (Am. Compl. ¶¶ 61.b, 62, 6).

Under the MCPA, an injury must be "objectively identifiable" to be cognizable in a private action. Lloyd v. Gen. Motors Corp., 916 A.2d 257, 277 (Md. 2007). "In other words, the consumer must have suffered an identifiable loss, measured by the amount the consumer spent or lost as a result of his or her reliance on the sellers' misrepresentation." Id.

Adewol asserts that "natural" items are generally worth more than non-natural items, (Am. Compl. ¶¶ 26–30), but she does not provide any facts about how the price of the Product compares to similar products that do not contain synthetic ingredients, nor does she identify an amount it would "take to remedy the loss [she] incurred as a result of the respondents' alleged deceptive trade practices." Chambers v. King Buick GMC, LLC, 43 F.Supp.3d 575, 621 (D.Md. 2014) (quoting Lloyd, 916 A.2d at 281). "A hypothetical price concession is simply not the type of tangible injury appropriately recognized in a private MCPA action, as virtually any misrepresentation could support such a claim of 'injury.'" Jones v. Koons Auto., Inc., 752 F.Supp.2d 670, 684 (D.Md. 2010). The Court finds that because Adewol has identified only a hypothetical loss, she has not pled a cognizable injury under the MCPA. Accordingly, her MCPA claim must be dismissed.

### III.   CONCLUSION

For the foregoing reasons, the Court will grant TGIN's Motion to Dismiss (ECF No. 20). A separate Order follows.

Entered this 10th day of July, 2024.

/s/
George L. Russell, III
United States District Judge
